ILOCK HILLS v. THOMAS J. BAILEY, JAMES DAVIS AND JAMES
DAVIS, JR.

*Contract.*

The plaintiff and defendants were joint owners of certain real estate, and partners in opening
and working the marble quarries thereon. The defendants advanced all the money paid
for the real estate, and for carrying on the partnership business;—the plaintiff was the
active partner and agent to conduct the business, and was ultimately to pay the defend-
ants his proportion of their advances. By an agreement in writing, between the plaintiff
and one of the defendants, in behalf of himself and the other defendants, the former
agreed to superintend the business of the firm, and the latter agreed, in consideration of
the plaintiff's services, to pay him five hundred dollars a year; and the writing contained
a further provision, that certain travelling expenses should be allowed the plaintiff, in
addition. *Held*, that the language used in reference to the payment of the five hundred
dollars, though indicative of a personal undertaking, was to be construed, with reference
to its subject matter, the situation of the parties and the other provisions of the contract,
as an agreement merely that the plaintiff should receive that sum from the firm;—and
that, therefore, the present action of general *indebitatus assumpsit* could not be sustained
for its recovery.

ASSUMPSIT. The declaration contained only the general counts
for money paid, work and labor, &c. Plea, the general issue, and
trial by the court, May Term, 1854,—COLLAMER, J., presiding.

On trial, the following facts appeared. In December, 1841, the
plaintiff exhibited to the defendants, in Boston, some specimens of
marble he had obtained on land in Brandon, Vermont, and desired
assistance in procuring and quarrying the same, and for that pur-
pose a copartnership was formed by the plaintiff and the defend-
ants, to carry on said business on their joint account, and to share
in the avails, one-quarter each,—the money to be furnished by the
defendants, and the plaintiff to be the active partner and agent, to
conduct the business. In pursuance of this agreement, a purchase
was made of the land, on which said marble was situated, and the
defendants paid the whole purchase money, and four deeds were
taken, each of one undivided quarter, one to the plaintiff, and one
to each of the defendants; and the plaintiff executed two mortgages
of his part,—one to the defendant, Bailey, the condition of which
was as follows: " Nevertheless, if the said Hills shall well and
" truly pay. or cause to be paid to the said Bailey, his heirs or
" assigns, $208.33, and interest from the 18th day of December,
" A. D. 1841, within one year from that date, and shall also indem-
" nify and save harmless the said Bailey, for all moneys or other
" property he shall advance for said Hills, in working a marble

" ledge or quarry, in said Brandon, purchased of said Houghton,
" and for the purpose of working which, said Hills is bound to fur-
" nish one-fourth part of the funds. Now, if said Hills shall refund
" and pay back to said Bailey the aforesaid sum of $208.33, and
" all moneys by him advanced, for the benefit of him, the said Hills,
" as aforesaid, and all legal interest thereon accruing, in a reason-
" able time after demanded, then this deed to be null and void,
" otherwise to remain in full force and virtue in law ; "—and one
to the other two defendants, with a like condition. At the same
time, an agreement in writing was made between the defendant
Bailey and the plaintiff, of which the following is a copy.

" The following agreement was this day made, by Thomas J.
" Bailey, of Boston, in Massachusetts, on his own part, and for
" James Davis and James Davis jr., of said Boston, with Ilock
" Hills, of Cavendish, in Windsor county, and state of Vermont,
" viz., the four above named persons having purchased of Mr. N.
" Houghton and Mr. David Wood, of Brandon, in Rutland county,
" and state of Vermont, their farms, for the main purpose of quar-
" rying, transporting, sawing and selling marble, and minor pur-
" pose of cultivating said farms ;—it is agreed by said Ilock, on
" his part, to oversee, superintend and control the direction of the
" above mentioned farms, in the manner and for the purposes
" named, see to the procuring of materials, horses, oxen, and all
" necessary utensils, employing workmen, paying them, purchasing,
" if necessary, a mill or mill privilege, (if one suitable, in the judg-
" ment of all concerned, can be procured,) directing and overseeing
" the putting up of mills, machinery, and all other materials and
" utensils for the sawing the same, for the term of two years from
" the first day of January next, 1842,—and in consideration of the
" services so rendered, I, the said Thomas, in my said capacity,
" agree to pay the said Ilock five hundred dollars per annum ; and in
" all cases where it is necessary for said Ilock to travel or be trans-
" ported or conveyed from or to the said farm, or any other place,
" on business relating to the above named concern, his expenses
" will be allowed him in addition.

" THOMAS J. BAILEY.

" ILOCK HILLS.

"*Brandon*, December 20th, 1841."

The plaintiff entered upon his agency, and prosecuted the business of quarrying marble, on said land, in the name of the copartnership aforesaid, and the defendants furnished him, from time to time as he required, money to prosecute said business, to the amount of about seven thousand dollars, besides the money advanced for the purchase of the land. He continued to prosecute said business, until July 10, 1843, when the defendants, becoming dissatisfied with his conduct as agent, wrote him a letter of dismission, on the receipt of which he ceased operations, and the business was no further prosecuted. The plaintiff afterwards presented to the defendants his account with the copartnership in which he charged the company with his services as agent. The account was not settled, because the plaintiff neglected to furnish vouchers for the various charges therein contained, and thereupon the plaintiff commenced this action. After the suspension of work, the lands and all the utensils and property of said company were sold, and the whole avails received by the defendants, which failed to repay them the moneys by them advanced, by the sum of eight thousand dollars; and the account between said company and the plaintiff, and the account between the copartners in said company, remained unsettled.

The plaintiff insisted that, upon and by virtue of said agreement in writing, he was entitled to recover of the defendants the value of his services, on the ground that the agreement was a personal obligation entered into by them, and not binding on the copartnership; but the court decided otherwise, and rendered judgment for the defendants, to which the plaintiff excepted.

*S. Fullam* for the plaintiff.

*Washburn & Marsh* for the defendants.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J. The plaintiff and the three defendants had formed a copartnership, for the purpose of carrying on the marble business, and each to share one-quarter in the avails. Each partner was bound to furnish one-quarter of the money necessary to be advanced

in carrying on the business, though it was expected that the defendants would, in point of fact, advance the whole of the money, and the plaintiff secured each of the defendants for the money they should advance for him, by mortgaging his portion of the real estate which they had bought.

The plaintiff was to be the agent and acting partner, and the object of this suit is, to recover for the personal services of the plaintiff, in superintending the business of the firm. The result of this suit must depend upon the question, whether the plaintiff's compensation was, in point of fact, to be paid by the firm, or by the three defendants. If by the firm, this action cannot be sustained,—but, if the undertaking was a personal one, of the three defendants, then the action well lies. This must depend upon the construction of the contract, bearing date the 20th of December, 1841, made between the plaintiff and Thomas J. Bailey, in behalf of himself and the two other defendants. This written agreement does not constitute the articles of copartnership, but proceeds upon the basis that one had been formed, and the object of this agreement is, to provide for the agency of the plaintiff in carrying on the business of the firm, and to stipulate as to what shall be his compensation. The language of the contract is, " and in considera-" tion of the services so rendered, I, the said Thomas, in my said ca-" pacity," (that is, for himself and the other two defendants,) " agree " to pay the said Ilock five hundred dollars per annum ; and in all " cases where it is necessary for said Ilock to travel or be trans-" ported or conveyed from or to the said farm, or any other place, " on business relating to the above named concern, his expenses " will be allowed him in addition." Though the language used by Bailey is indicative of a personal undertaking, yet it is to be understood and construed with relation to the subject matter, the situation of the parties, and the whole should be taken together. The compensation 'to be paid to the plaintiff, is for services rendered for the firm, and is *prima facie* a charge against the firm,—and it would be unnatural to provide that the three defendants should pay the plaintiff five hundred dollars annually, for three-fourths of his services, which, if they are personally liable, would be the result. Besides, the contract has no reference to a splitting of his compensation. The language is, " in consideration of *the* services so

"rendered," &c. The closing part of the contract, which provides that the travelling expenses of the plaintiff will be allowed him in addition, goes far to give a construction to what precedes it. It can hardly be urged that the travelling expenses of the plaintiff should be a personal charge against the three defendants. Besides, it seems that the plaintiff has himself given, by implication, a construction to this contract. In his account with the company, he has charged them with the first year's salary, at $500, and has carried it into his account in making out his balance.

We think, then, that this agreement between the plaintiff, who was to become the active agent of the firm, and the other members, was only an agreement fixing the compensation to be allowed the plaintiff, by the firm, and that the language, "I will pay," &c., is to be understood only as importing an agreement by the defendants that $500 should be paid the agent annually, out of the effects of the concern.

The judgment of the county court is therefore affirmed.