OMAHA CONSOLIDATED VINEGAR COMPANY, APPELLANT, v. JOSEPH BURNS, APPELLEE.*

FILED FEBRUARY 19, 1895.   No. 5473.

1. **Contract:** MECHANIC'S LIEN FOR SINKING WELL: FORECLOSURE.   One who predicates his right to relief upon the alleged performance by him of all the terms of a written contract must show a substantial compliance with each requirement thereof, where there has been neither a waiver nor acceptance of benefits thereunder by the other contracting party.

2. **Pleading.**   A party is not allowed to allege in his petition one cause of action and prove another upon the trial.   The *allegata* and *probata* must agree.   Following *Imhoff v. House*, 36 Neb., 28.

APPEAL from the district court of Douglas county. Heard below before HOPEWELL, J.

*Mahoney, Minahan & Smyth*, for appellant.

*Chas. Offutt, contra.*

RYAN, C.

It is necessary to refer to the petition originally filed in the district court of Douglas county merely to explain the

---

* A rehearing was allowed.

existing attitude of the respective parties to the subject-matter in litigation. Originally there was filed in the office of the register of deeds of said county an affidavit of the defendant Joseph Burns for a mechanic's lien on account of sinking a well on real property of the plaintiff in Omaha. The petition in the first instance filed herein was for the purpose of having the aforesaid claim of lien removed as a cloud on the title of plaintiff. The defendant by his answer, in the nature of a cross-petition, asked the foreclosure of the lien claimed, as though the cross-petition had been the first pleading filed, and thereafter the action proceeded as though it was one brought for such a foreclosure by the defendant. From a decree in favor of the defendant, granting for the most part the relief prayed, the plaintiff has appealed.

By his cross-petition the defendant averred that plaintiff, through its president, its duly authorized agent, entered into a contract in writing, of which the following is a copy:

"SEPTEMBER 11, 1890.

"JOSEPH BURNS: Please sink a tubular well, seven-inch lap-welded iron pipe, at our vinegar factory at Omaha, and continue sinking the same until you get a water supply of 2,000 gallons of water per hour, unless sooner stopped by us. You to furnish all pipe points, point, and working barrel and valves, together with plunger rods and all other material necessary to construct and complete the well in a first-class manner to the surface of the ground, and on the completion of the work we agree to settle for same at the rate of five dollars ($5) per foot; one-half to be paid in cash and the balance to be paid by our note of ninety days without interest. We will furnish at our own expense the pump, or whatever we may decide to use to raise the water with. It is the understanding that you pay all bills for labor and material necessary to complete the work as above, for the above prices, and should the well have to be sunk below 250 feet, then the price shall be six dollars per foot below

the first 250 feet or for the second 250 feet or any part
thereof that it may be necessary to sink the well to obtain
the necessary amount of water; and it is further understood
that in no case shall the well be sunk deeper than 500 feet
deep at this price from the surface of the ground.    It is the
understanding that when the well is completed as above it
shall be paid for as first mentioned, namely, one-half cash
and the balance in note as above.

.     "J. H. BARRETT, *Pres.*"

Immediately following the reference in the cross-petition
to the above contract attached as an exhibit there were the
following averments:

"4. And this defendant alleges that thereupon and in
pursuance of said contract he sank a well on said lots or
premises, being the same identical premises upon which the
buildings, machinery, and manufactory so as aforesaid
erected by plaintiff, stood and were situated, and that in
sinking said well this defendant did work and furnished
material between the 24th day of September, 1890, and
the 13th day of January, 1891, inclusive, amounting in
the aggregate, according to the terms of said contract, to
the sum of $2,890, and that this defendant further per-
formed all the terms and conditions of said contract on his
part to be performed."

There was no other description of the manner in which
the defendant had entitled himself to the foreclosure prayed,
except that there were the usual averments of the filing of
a verified account for a mechanic's lien as required by stat-
ute.    The prayer of the cross-petition was that an account-
ing might be had of the amount due from plaintiff to de-
fendant; that such amount should be adjudged and decreed
to be a valid and subsisting lien upon said premises; that
defendant should have judgment against plaintiff for the
sum of $2,890, with interest thereon from the 7th day of
February, 1891, the day on which was filed the claim of
defendant for a lien; that said premises be sold and the

proceeds thereof applied to the payment of such judgment, interest, and costs as should be rendered in behalf of the defendant; that in case such proceeds should be insufficient to fully satisfy the amount found to be due and owing to the defendant, plaintiff might be adjudged to pay the deficiency, and that the defendant might have such other and different relief as in justice and in equity he should be entitled to. The district court made findings, among others, as follows:

"That on the 11th day of September, 1890, the plaintiff made, and the defendant accepted, the written proposition, dated September 11, 1890, and set out in the answer and cross-petition of the defendant; that by the terms of said proposition, which was accepted as aforesaid, the plaintiff employed the defendant to sink a tubular well of seven-inch lap-welded iron pipe at the plaintiff's vinegar factory at Omaha, Nebraska, and to continue to sink the same until the defendant should get a water supply of two thousand gallons of water per hour, unless sooner stopped by the plaintiff; that said well, by the terms of said contract, was required to be cased from top to bottom with lap-welded iron pipe, seven inches in diameter on the inside; that said contract might be performed by the defendant either (1) by sinking a well and casing the same with lap-welded iron pipe of the size aforesaid until the defendant secured thereby a water supply of two thousand gallons of water per hour, or (2) until stopped by the plaintiff; that the defendant in good faith undertook the execution of said contract and proceeded in the performance of the same in a proper and workmanlike manner, and that, in so doing, the defendant sank a seven-inch tubular pipe a distance of one hundred and forty-five feet from the surface of the ground, at which point the defendant struck a hard limestone formation sixty-five feet in thickness; that the defendant then proceeded through said rock formation and extended it a number of feet with a hole seven inches in

diameter, and at the bottom of said hole proceeded further with a hole six and then five inches in diameter, until he reached a point five hundred and twenty feet below the surface of the ground, at which time the defendant determined to ream out and make larger the hole where it would not receive a pipe seven inches in diameter, and to carry the seven-inch pipe down the distance of three hundred and eighty-five feet from the surface of the ground with a view of extending the depth of the well below said five hundred and twenty feet and until the supply of water aforesaid was reached; that while the defendant was proceeding with said work as aforesaid, and before he secured the amount of water required to perform the conditions of said contract, the plaintiff stopped the defendant from work and compelled him to leave the premises and to remove his working tools and materials therefrom, and by reason thereof the defendant was unable to longer continue said work, though the defendant was then willing and in good faith offered to continue the same and to complete said well from top to bottom cased with lap-welded iron pipe, seven inches in diameter, inside measurement; that by the terms of said contract, upon the performance of the same, the defendant was entitled to receive from the plaintiff the following amounts:

"For the first 250 feet, $5 per foot, a total of.....    $1,250
"For the second 250 feet,$6 per foot, a total of...    1,500

"That is to say, a total for the 500 feet of......    $2,750

"That when the plaintiff stopped the defendant, said well was not complete a distance of five hundred feet from the surface of the ground, but that the work which had been done below the one-hundred and forty-five feet from the ground was a part of the whole work contracted for, and was properly done in order to sink said well a distance of five hundred feet from the ground with lap-welded iron pipe, seven inches in diameter, inside measurement, from

top to bottom, and in order to enlarge the said well and sink a seven-inch pipe from top to bottom, and to complete the same with the equipments provided for in said contract, the following work and material of the value, as follows, was necessary, that is to say: That the work to enlarge said hole so as to receive a seven-inch pipe from top to bottom was fairly and reasonably worth the sum of...... $100 00

"That it would require an additional 355 feet of seven-inch pipe at $1.10 per foot, making a total of.................................................. 390 50

"That it would require a working barrel of the value of............................................. 60 00

"That it would require a point to said pipe of the value of............................................. 30 00

"That it would require a plunging rod of the value of............................................. 14 00

"Making a total amount of work, material, and equipments necessary to complete said well, in addition to what had been done as aforesaid, the sum of....................................... $594 50

"The court therefore finds that the defendant is entitled to recover in this case such proportion of the whole contract price of $2,750 as the work done bore to said contract price, and that, therefore, that the work done was of the value of $2,750, less the said sum of. $594.50, the total of $2,155.50; that the defendant is entitled to interest thereon from the 7th day of February, 1891, until the first day of the present term of court, that is to say, September 21, 1891, seven months and a half, which said interest, at the rate of seven per cent per annum, makes the sum of $94.27, and that the total amount of the defendant's recovery, with interest to the first day of the present term of court should be the sum of $2,249.77."

The above quoted findings, as far as they go, correctly reflect the evidence as adduced by the defendant, except that

the diameters of the extensions were five and four inches instead of six and five, as incorrectly stated. They, therefore, except as suggested, will be accepted as a correct, though not complete, history of the transactions described. This neither concludes us as to the construction proper to be placed upon the contract referred to, nor with reference to the rights or liabilities of the respective parties thereunder. The language of the contract required the defendant to "sink a tubular well, seven-inch lap-welded iron pipe, and continue sinking the same until you get a water supply of 2,000 gallons of water per hour, unless sooner stopped by us." The district court held that as plaintiff stopped the defendant from work and compelled him to leave the premises and to remove his tools, by reason whereof defendant was unable to longer continue said work, the plaintiff was liable for the contract price of sinking 500 feet, that is, $2,750, less the items above specified, amounting to $594.-50, which would be required to enlarge the hole so that it would be seven inches in diameter throughout the entire 500 feet and provide the additional seven-inch casing thereby rendered necessary, as well as certain equipments required for hoisting water. Very soon after the service of notice upon him to quit work the defendant, in writing, acknowledged receipt of said notice, and thereupon offered to enlarge the well and put in a seven-inch pipe the whole depth, in order as the acknowledgment recited, to fix and determine the price to be paid the said defendant. As the district court construed the contract to require that a well seven inches across should be sunk its entire depth, and as this was the construction also adopted by Mr. Burns, it is with more perfect confidence that we adopt the same understanding, which, independently of these considerations, we believe is the natural import of the language used. But this was not the only requirement, for there were to be supplied 2,000 gallons of water per hour unless Mr. Burns was sooner stopped by the other contracting party. The

district court seems to have assumed that compliance with this requirement was prevented by the work being stopped by plaintiff's notice. In the latter part of the contract quoted above there occurs the following provision: "It is further understood that in no case shall the well be sunk deeper than 500 feet deep at this price from the surface of the ground. It is the understanding that when the well is complete as above it shall be paid for as first mentioned, namely, one-half cash and the balance in note as above." This language the district court probably construed as a limitation with respect to the depth of the proposed well, for, although the well had actually reached the depth of 520 feet, the defendant's right to compensation was limited to 500 feet. This construction is not questioned by any party and is probably correct in the abstract. The stipulated 2,000 gallons of water per hour could not, therefore, be obtained by sinking the well deeper. It was seven inches in diameter for a distance of but 145 feet from the surface. Was there any showing that, by reaming out the well so that its diameter would have been for its entire depth seven inches there would have been even a probability of increasing the flow of water? Mr. Burns testified that the test showed but twelve or fifteen hundred gallons per hour of muddy water. On being recalled he further stated that he had pumped nearly five thousand gallons per hour from a two-inch well, repeatedly, and through a four-inch pipe had pumped seven or eight thousand gallons per hour. There was no pipe of less diameter than that last named in this well, so that we are bound to believe that for the distance of 520 feet there was no pipe which would not admit of a flow of seven or eight thousand gallons of water per hour, provided such an amount of water had been reached. The utmost amount found by the test of Mr. Burns did not exceed fifteen hundred gallons per hour, and, since the pipe which he used admitted of a flow of seven or eight thousand gallons per hour, a capacity in excess of

the water found of at least fifty-five hundred gallons, it conclusively results that at the depth of 500 feet, where this test was made, the well would not yield more than three-fourths of the amount of water stipulated for, irrespective of whether the pipe was of the diameter of four inches or seven inches. While by reaming out the well it was possible to comply with the accepted requirement that the pipe within it should be seven inches in diameter, the proofs are direct and convincing that another indispensable condition, and that, too, of the only value to the other contracting party, could not thereby be met. It is possible that this well might be sunk to the depth of 500 feet, that to this depth a seven-inch pipe could be inserted, and that the tubular well so sunk could be fully equipped for the sum of $594.50 allowed for these purposes by the district court, but what would this avail if there was no water to hoist? It may be urged that there would be 1,500 gallons of muddy water available per hour, but this, as a compliance with the terms of the contract alleged to have been fully performed, would have been as unavailable as though no water whatever had been found. In this case there is no element of acceptance of benefits resulting from a partial compliance, neither is there any waiver of a literal performance of the terms of the written agreement. The contract of the defendant made his right to payment contingent upon a result which he has never accomplished. The district court, by the allowance of $594.50 for the purpose of sinking and equipping a seven-inch tubular well, has attempted to place the parties in the same situation as though Mr. Burns had fulfilled his undertakings. This much alleged and proved would not have entitled him to recover as for the full performance of his contract. (*Sherman v. Bates*, 15 Neb., 18.) Indeed, this proposition is practically admitted by counsel for the appellee, since, in his brief, he quotes with approval the following language from 2 Sutherland, Damages, p. 508: "The action may be

brought on the contract when the contractor can show that he has substantially performed his part, except as he can allege and prove the legal excuse of being prevented by the employer, the act of God, or the law, but not otherwise;" citing *Smith v. Gugerty*, 4 Barb. [N. Y.], 614; *Estep v. Fenton*, 66 Ill., 467; *Taylor v. Beck*, 13 Ill., 376. The questions presented have been considered on this theory of the appellee, conformably with which his entire evidence was introduced.

Under the averments in the cross-petition of defendant of strict performance of the terms of his contract it more than admits of doubt whether in any event the relief decreed could have been granted, for proof of facts which excuse performance can never be said to amount to performance itself. A party will not be allowed to allege in his petition one cause of action and prove an other upon the trial. The *allegata et probata* must agree. (*Imhoff v. House*, 36 Neb., 28; *Powder River Live Stock Co. v. Lamb*, 38 Neb., 339; *Traver v. Shaefle*, 33 Neb., 531; *Luce v. Foster*, 42 Neb., 818.) The cross-petition presented but the right to enforce a mechanic's lien for the full performance of a written contract. The decree recognized under these averments the right to show and recover for but a partial performance.

Appellant has strenuously contended that no right to enforce a mechanic's lien for the sinking of a well exists under the statutes of this state. Of this proposition no decision was necessary, hence it has received no consideration. In our investigations we have not questioned the right to relief of this character upon a proper case being presented, but this has been conceded solely for the purposes of this discussion. The judgment of the district court is

REVERSED.