SAUNDERS v. SHORT et al.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1898.)

No. 381.

CONTRACT—PART FULFILLMENT—SALE.

A contract for the delivery of a certain number of cattle, unlike one for the building and completion of a house, is severable in its nature, and, if the vendee accepts and appropriates to his own use a portion of the property so contracted for, he must pay the stipulated price for such portion, less the damages sustained by reason of the failure of the vendor to make complete delivery.

86 F.—15

In Error to the Circuit Court of the United States for the District of Idaho.

On the 16th day of March, 1896, the parties to this suit entered into a written contract, by which, in consideration of $4,000 at the time paid by the plaintiff in error to the defendants in error, and in consideration of further payments thereby stipulated for, the defendants in error agreed "to sell and deliver to the said B. F. Saunders eighteen hundred head of steers of the following ages: About nine hundred head yearlings, about nine hundred two year olds, about —— three year olds, and about —— four year olds, at the following prices, to wit: Yearlings, twelve dollars per head; two year olds, eighteen dollars per head. Said cattle to be delivered at Payette, Idaho, and Ontario, Oregon, free on board cars, from twentieth day of May to the fifth day of June, 1896, at option of buyer, he to give twenty days' notice of time of delivery." The contract proceeded to provide for the condition in which the cattle should be delivered,—that is to say, that they should be sound, healthy, fit for driving or shipment, etc.,—and were to be delivered in not less than train-load lots of 15 cars. It provided for the payment of the balance of the purchase price on delivery of the cattle and completion of the contract, and also that, if the vendors offered more than 1,800 head, the vendee would take the same, up to 2,000 head, at the same prices, and upon the same terms as to delivery; and it concluded with the provision that "the said B. F. Saunders hereby agrees not to place any other buyers in this territory for this class and age of cattle during the months of March, April, and May, A. D. 1896." The defendants in error brought this suit in the court below as plaintiffs, upon this written contract, which was annexed to and made a part of the complaint, alleging in their complaint that the defendant to the suit disregarded and broke the clause of the contract last above quoted, to the effect that he would not place other buyers in the territory referred to during the times stated, thereby rendering it impossible for the plaintiff to purchase within that territory at the prices stated in the contract a greater number of cattle, for sale and delivery to the defendant, than is in the complaint afterwards stated. The complaint next alleges "that plaintiffs have duly and diligently performed all the conditions of said contract on their part, and have sold and delivered on the 31st day of May, 1896, to defendant five hundred and twenty-four yearling steers at twelve dollars per head, seven hundred and fourteen two year old steers at eighteen dollars per head, and eighty-eight three year old steers at 22 dollars per head, the aggregate value and purchase price being $21,076.00; that defendant has not paid said purchase price, nor any part thereof, except the sum of $4,000.00, on March 19th, 1896, advance and forfeit money as per said contract, and $16,061.00, on June 1st, 1896." The prayer is for judgment against the defendant for the sum of $1,015 and costs.

The answer of the defendant to the suit admits the making of the written contract set out in the complaint, denies any breach of its conditions on the part of the defendant, and denies the performance of all the conditions on the part of the plaintiffs. It denies that 88, or any other number, of three year old steers were delivered to or accepted by the defendant pursuant to the written contract, but makes no other denial of the allegations of the complaint respecting them. It alleges that the plaintiffs failed and refused to deliver to the defendant 562 head of one and two year old steers agreed to be sold to him in and by the written contract mentioned. And by way of counterclaim the defendant sets up the same written contract declared on, and alleges his performance of all the terms and conditions on his part provided for, and a partial performance of the plaintiffs' obligations thereunder, to wit, the delivery of 1,238 head of the cattle mentioned in the contract on the 1st day of June, 1896, at which time the counterclaim alleges the defendant, at the request of the plaintiffs, agreed to receive the remainder of the cattle stipulated for, to wit, 562 head, at any time during the month of June, 1896, and the plaintiffs agreed to complete the delivery thereof, under the terms of the contract, during that month. The counterclaim further alleges that at the time of the delivery of the 1,238 head of cattle on June 1, 1896, the defendant, at the request of the plaintiffs, paid to them, on account of the cattle so delivered and to be delivered under the contract, the sum of $14,122, and that "by express agreement between the plaintiffs and this defendant the further sum of one thousand dollars ($1,000), which, upon the

completion of said contract, would become due and owing to said plaintiffs on account of the cattle then and there delivered by them, was to be held by defendant to insure the complete fulfillment of said contract"; that subsequently, to wit, on the 6th day of June, 1896, the plaintiffs abandoned the contract, and refused to further comply with its terms, by which failure the defendant was damaged in the sum of $2,100.

The bill of exceptions shows that the only evidence offered and received on the trial on the part of the plaintiffs was the written contract sued on, and the testimony of the plaintiffs to the effect that under the contract they delivered to the defendant, at Caldwell and Payette, on the 31st day of May, 1896, "certain cattle, among which were 88 head of three year old steers; that upon the next day the parties met, and calculated the number of head delivered, and their value at the agreed contract price, which amounted to the sum of $21,015; that defendant paid them, in addition to the sum of $4,000 before paid as specified in the contract, the further sum of about $16,000, leaving the balance on the cattle so delivered of $1,015 unpaid, and no part of which has since been paid; that the number of one year olds and two year olds delivered was 562 head short of the 1,800 head called for in the contract; that during the delivery of these cattle plaintiffs informed defendant that they could not get or deliver any more cattle; that the defendant still wanted the rest of the cattle delivered; that the plaintiffs accepted the money paid to them as partial payment on the cattle delivered, because their obligations were out, and they needed the money to meet them, but that they did not consent to the retention of the balance of $1,015 as a guaranty for the delivery of more cattle, and that they did not promise to deliver any more cattle under the contract."

The defendant testified in his own behalf, in substance, that he attended, on the 31st day of May, at Caldwell, Idaho, for the purpose of receiving from the plaintiffs the cattle to be delivered under the contract introduced in evidence by the plaintiffs, and that a part of the cattle were at that time delivered at Payette, Idaho, some miles distant, to the defendant's agent; that upon the following day the defendant and the plaintiffs met at Payette, and ascertained that only 524 yearling steers and 714 two year old steers had been delivered; that the defendant then and there notified the plaintiffs that he insisted upon the completion of the contract by the delivery to him of the remaining steers, and that he then informed the plaintiffs that he would make them a further partial payment under the contract, though not obliged to do so, and that, if they desired further time in which to complete the delivery, they might have until June 15, 1896, in which to do so; that he would retain until the final delivery, from the sum to which the cattle already delivered would amount at the contract price, $1,000 as a guaranty of the completion of the contract, to which arrangement the plaintiffs assented, and that the defendant thereupon made the payment mentioned; that subsequently, and about the 5th day of June, he received from the plaintiffs the following letter:

"Payette, 6, 4, '96.

"B. F. Saunders, Esq., Salt Lake City—Dear Sir: Mr. Short came back to-day from looking for cattle for you with the report that he had seen all the principal cattle men in the country, and is unable to get cattle for you. He says the cattle men tell him they could not make another gather and deliver any number of cattle by June 15. That it is useless to try. That he regrets being unable to get you the 400 head you still want, and he further requests me to say to you that he has made drafts on you through the Payette Valley Bank for the thousand dollars you still owe them for cattle already received, and not paid for, and requests that this letter should be answered by wire to-morrow, whether you will pay draft or not. A failure to so answer will be taken for a refusal to pay.

"Yours, truly,                                                    Short & Moss."

The defendant further testified that on or about June 13, 1896, he received from the plaintiffs the following letter, to wit:

"Payette, 6, 12, '96.

"B. F. Saunders, Esq., Salt Lake City: Replying to your favor of 6–10, will say that we cannot get the cattle men in this territory to make another gather of cattle, even at fancy prices that we have offered. Their ideas of values of

cattle become inflated. They say another year cattle will be worth much more money than they are even now offered for them, and base their judgment on the idea that they were so many buyers in the field here this year, all wanting all the cattle they could get, and paying from eleven to thirteen dollars along at the last for year olds. You cannot touch them now here, and can't get them to even try and gather again. They feel very independent. We have done all that any men could do to get you the cattle you wanted. Was forced to pay full contract price for over half the cattle we did buy for you, and rode the country from date of contract to delivery, almost night and day, from Harvey, Oregon, to Salmon River, Idaho, and got you all the cattle we were able to in the country about Payette. We were badly handicapped by the Colorado yearling buyers, Shang, and so forth. Had all the parties directly and indirectly interested with you kept out of here, or kept from buying and making offers, we could have filled your number. Regretting that there has been any disappointment to you as well as ourselves in any manner, we are,

"Truly, yours,                                    Short & Moss."

The defendant further testified in respect to the additional amount he was compelled to pay for similar cattle to those plaintiffs contracted but failed to deliver to him, needed by him to make good his own contracts.

In rebuttal the plaintiffs testified that at the time the defendant paid them the $16,061 they did not consent that he might retain any part of the contract price of the cattle delivered as a guaranty for the delivery of the remainder of the cattle called for by the contract, and that the defendant paid the sum mentioned after being informed by the plaintiffs that they were unable to procure any more cattle for delivery under the contract.

Upon this state of the pleadings and evidence the counsel for the defendant requested the court below to give this instruction to the jury: "In this form of action the plaintiffs, Moss and Short, are not entitled to recover, not having made out a case alleged by them in their complaint. They have alleged in their complaint a contract made with the defendant, Saunders, and fully completed and carried out by them except so far as its completion was prevented by Saunders. This they have failed to prove, and, whatever their rights in any other action, they cannot recover in this action." The court refused to charge the jury as thus requested, to which refusal the defendant, by his counsel, duly excepted. The record proceeds: "As a part of the instructions the court gave the following, which was the only instruction upon the question involved in such instruction, to wit: The court further charged the jury that in returning a verdict in this action they might ascertain the amount which would be due from the defendant, Saunders, to the plaintiffs upon the amount and number of cattle delivered by them to the said Saunders at the contract price, and should also ascertain the amount of the damages due to the defendant, Saunders, from the plaintiffs on account of the breach of said contract; and that the difference between said amounts would constitute the amount of the verdict in favor of the plaintiffs or in favor of the defendant, as the case might be." To which instruction of the court the defendant, by his counsel, duly excepted. A verdict was returned in favor of the plaintiffs for $757.94, for which amount, with costs, judgment was given against the defendant.

E. B. Critchlow, John Chetwood, and Wyman & Wyman, for plaintiff in error.

J. H. Richards, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It is a mistake to say that the complaint is confined to cattle covered by the written contract. That embraced only one and two year old steers. The number contracted for by the written contract was 1,800, consisting of about 900 head of yearlings and 900 head of two year old steers at certain specified prices, and sub-

ject to certain conditions, with a provision that, should the vendors tender more than 1,800, they would be accepted by the vendee to the number of 2,000 head, at the same prices, and upon similar conditions. But the complaint, in addition to its allegations respecting the one and two year old steers, also alleged that on the 31st day of May, 1896, the plaintiffs sold and delivered to the defendant 88 three year old steers at $18 per head. This allegation is not denied by the answer. The denial in that regard, if denial at all, is only to the effect that none of the three year old steers were delivered to or accepted by the defendant under the terms of the written contract. Two causes of action are, therefore, indiscriminately jumbled together in the complaint. No objection thereto, however, appears to have been taken in the court below by demurrer or otherwise. The cause of action upon the written contract proceeds upon its part performance by the plaintiffs and the alleged prevention by the defendant of the plaintiffs' complete performance thereof. Unless the allegations of the complaint in respect to the defendant's prevention can be treated as surplusage, the judgment must be reversed, since those allegations are denied by the answer, and there is no proof to sustain them. Whatever was necessary for the plaintiffs to allege was necessary to be proved. We are, therefore, to inquire whether the allegations of the complaint in regard to prevention by the defendant of the full performance by the plaintiffs of their written contract can be regarded as surplusage. The action being an action at law, the pleadings and proceedings in the federal court were required to conform, as near as practicable, to those of the courts of the state in which it was held. Rev. St. § 914. By statute, as well as by the constitution of Idaho, it is declared that there shall be in that state but one form of action for the enforcement or protection of private rights or the redress of private wrongs. Const. art. 5, § 1; Rev. St. Idaho, § 4020. Section 4168 of the same statutes provides that "the complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language." Probative facts, of course, should not be stated, but every ultimate fact essential to the cause of action is required to be alleged in the complaint. In respect to all such facts the defendant is entitled to take issue. But facts not entering into the constitution of a cause of action need not be alleged, and, if alleged, may be properly treated as surplusage. Recurring to the complaint in the case at bar, it is to be observed that the plaintiffs sue only for the balance due for the number of cattle actually delivered to and received by the defendant at the prices the defendant is alleged to have agreed to. In respect to the effect of the acceptance of a delivery of a part of personal property contracted for under an entire contract the American cases are conflicting. In some of the states it has been held that nothing can be recovered for part performance of an entire contract unless full performance was waived or prevented. Champlin v. Rowley, 18 Wend. 194; Smith v. Brady, 17 N. Y. 173; Catlin v. Tobias, 26 N. Y. 217; Jennings v. Lyons, 39 Wis. 553; Mill Co. v. Westervelt, 67 Me. 449. In Avery v. Willson, 81 N. Y. 341, however, it was

held that, if the vendee evinces by his acts a waiver of a complete delivery, by the receipt and appropriation to his own use of a portion of the goods contracted for, he thereby becomes liable to pay for what was actually delivered. The modern American rule seems to be that a party who has failed to perform in full his contract for the sale and delivery of personal property may recover compensation for the part actually delivered and received thereunder, less the damages occasioned by his failure to make the complete delivery. Many of the cases establishing this principle will be found cited in note 19, § 1032, 2 Benj. Sales. In Richards v. Shaw, 67 Ill. 222, in which the contract was to deliver 500 bushels of corn at a specified price per bushel, and the seller delivered only 391 bushels, for which he brought suit, the court said that, if the vendee received part of the goods sold under an entire contract, and retained that part after breach, this was a severance, and a suit would lie for the price, but the buyer might deduct damages for the failure to fulfill the residue of the contract. A contract for the sale and delivery of a certain number of cattle, unlike one for the building and completion of a house or other structure, is severable in its nature, and there is no just reason why, if the vendee accepts and appropriates to his own use a portion of the property so contracted for, he should not pay the stipulated price for such portion, less the amount of damages sustained by him by reason of the vendor's failure to make complete delivery. Under this rule,— in accordance with which are the instructions of the court below,— the allegation of prevention contained in the complaint may be properly disregarded as surplusage. The judgment is affirmed.