## BANCROFT v. HAMBLY.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1899.)

### No. 492.

1. VARIANCE—ACTION ON CONTRACT OF EMPLOYMENT.

    In an action on a contract of employment to recover salary for services rendered thereunder, in which the complaint alleges performance on the part of the employé, proof of such performance is essential, and the plaintiff cannot recover on evidence that the employé was prevented from performing the contract by defendant, it being shown that he did not in fact render any services thereunder.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF CONTRACTS.

    A federal court is not at liberty to accept as conclusive the construction of a contract by the supreme court of a state, where such construction in no manner depends on any state law, and is not pleaded as creating an estoppel between the parties; but is required to exercise its independent judgment, giving to the state decision, however, due weight as a precedent.

3. PARTNERSHIP—CONTRACT CREATING—CONSTRUCTION.

> B., who was the owner of a publishing company, entered into a contract
> with S., by which he sold and assigned to him an interest in the business,
> reciting that it was shortly to be incorporated, in consideration of past
> services, and that S. should devote his services to the company for 10 years.
> The contract provided that the interest of S. should be forfeited and revert
> to B. if S. should fail to perform his part of the contract, and that one-half
> of it should revert in case of his death within five years. It further pro-
> vided that the salary of S. should be a certain sum per month. *Held*, that
> the contract created a partnership, and contemplated the payment of the
> salary of S. by the firm, or by the corporation when formed, and that an
> action to recover such salary could not be maintained against B. individ-
> ually.

In Error to the Circuit Court of the United States for the Northern District of California.

Page, McCutcheon & Eells, for plaintiff in error.

Reddy, Campbell & Metson, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This is one of a series of actions brought against the plaintiff in error to recover salary at the rate of $350 per month, alleged to be due one N. J. Stone under and by virtue of a contract entered into on the 20th day of August, 1886, between him and the plaintiff in error. All of the actions were brought in the superior court of the state of California. In the first, final judgment passed for the plaintiff, and was affirmed by the supreme court of the state in 112 Cal. 653, 44 Pac. 1069. In the second, judgment was rendered for the plaintiff in the trial court, from which no appeal appears to have been taken. The third is the present action, and was brought in the superior court of the city and county of San Francisco, state of California, by the defendant in error, as the assignee of Stone, who, the complaint alleges, assigned to the defendant in error on June 13, 1896, all his right, title, and interest in and to any money then due or to become due under the contract. On the petition of the defendant the case was transferred to the court below for trial. The contract, which is set forth in hæc verba in the complaint, is as follows:

> "This agreement, made in San Francisco, California, by H. H. Bancroft and
> N. J. Stone, witnesseth: That in consideration of the valuable services done by
> the said Stone in conducting the publication and sale of the historical works
> of the said Bancroft, the business formerly being conducted as the Bancroft's
> Works Department of A. L. Bancroft & Co., but now being done and shortly
> to be incorporated under the laws of the state of California as the History
> Company, the said Bancroft hereby sells and assigns to the said Stone a one-
> tenth interest in the said History Company, plates, paper, stock, money, out-
> standing accounts, or other property of said company, upon the following condi-
> tions: The said N. J. Stone is to devote his whole time and best energies, so
> far as his health and strength shall permit, for a period of not less than ten
> years from the date of this agreement, to the publication and sale of the his-
> torical works of H. H. Bancroft, and of such other works, and conduct such
> other business as may be from time to time taken up and entered into by said
> History Company; and the said Stone agrees not to enter into or engage in,
> directly or indirectly, any other mercantile or manufacturing business, or in
> any other business or occupation, which shall in any wise absorb his mind and
> strength, or interfere with his interest or efforts on behalf of the said History

Company, during the said term of ten years. Upon the incorporation of the History Company, one-tenth of the whole number of shares shall be issued and delivered to the said N. J. Stone, but, should the said Stone fail in any wise to carry out this agreement, or any part thereof, in its full letter and spirit, then the said one-tenth interest in the said History Company shall be forfeited, and revert to the said H. H. Bancroft: provided, and it is distinctly understood and agreed, that, in case of the death of the said N. J. Stone before the expiration of five years from the date of this agreement, the said Stone having fulfilled all the conditions of this agreement up to that time, then one-half of the said one-tenth interest of the said Stone in the History Company shall go to his heirs, and be their property unconditionally; and, in the event of the death of the said Stone at any time after the expiration of five years from the date of this agreement, the terms hereof having been fully complied with, then the whole of the said one-tenth interest shall belong to his heirs unconditionally. The salary of the said Stone shall be $350 a month. The copyright of the said historical works belongs exclusively to the said Bancroft, and shall be fifty cents a volume for the History and Diaz, and twenty cents on the Little History of Mexico.

"Signed at San Francisco, the twentieth day of August, 1886.

"H. H. Bancroft.
"N. J. Stone.

"Witness:  W. N. Hartwell."

The present action is for salary at the rate of $350 a month, alleged to be due to the plaintiff, as assignee of Stone, for a period extending from April 1, 1894, to August 20, 1896, the complaint alleging performance by Stone of all the terms and conditions of the contract during that period of time, and the refusal of the defendant to pay therefor. To the complaint the defendant interposed a demurrer on the ground that it does not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court below. 83 Fed. 444. An answer was then filed by the defendant to the action, in which the defendant denied that during the period covered by the complaint Stone performed any of the terms or conditions prescribed by the contract sued on, and also averred that during that period he had been engaged in a business prohibited by the terms of the agreement. At the trial, Stone admitted, among other things, that he did not perform any service whatever for either the defendant, Bancroft, or the History Company, from April 1, 1894, to August 20, 1896, but testified that on April 2, 1894, he served Bancroft with a written notice, wherein he notified the latter that he was still willing and ready, as theretofore, to comply with the terms and conditions of the agreement, a copy of which was annexed to the notice; and that he would at all times thereafter be willing to perform all of the acts required of him by its terms. At the time Stone served this notice, he asked for a reply. Bancroft answered that he would look it over at his leisure, but never did, in fact, make any reply to the notice, nor did Stone see him, or have any further communication with him, either orally or in writing, during the time covered by the present action. Stone further testified, in substance, that he held himself in readiness to perform his duties under the contract; that he never was discharged by Bancroft or the History Company; that he never withdrew from the agreement, and that he was not permitted to do any work thereunder during the time covered by the present action; that during this period he went to the office of the History Company from time to time, sometimes as often as

once a week. Stone further testified that in the month of June, 1894, he undertook the San Francisco agency of a compound called the "Fitz Alcohol Cure," which was manufactured in the East, and consigned to him for sale, the conduct of which business he has continued in San Francisco ever since.

This being substantially the evidence in the case, we are of opinion that the court below should have granted the defendant's motion for an instruction to the jury to render a verdict in favor of the defendant; for, conceding the sufficiency of the complaint to constitute a cause of action in favor of the plaintiff, one of its constituent elements was the alleged performance by Stone of all of the terms and conditions of the agreement from April 1, 1894, to August 20, 1896,—the period of time covered by the action. Such performance by Stone being one of the essential elements of the alleged cause of action, proof thereof was, of course, equally essential. Saunders v. Short, 30 C. C. A. 462, 86 Fed. 225, 229; Vinegar Co. v. Burns, 44 Neb. 21, 62 N. W. 301. That Stone did not perform any service under the contract from April 1, 1894, to August 20, 1896, was distinctly testified by himself, and there is nothing in the evidence to the contrary. Why he did not do so need not be inquired, in view of the pleadings in the case. The complaint does not count upon prevention by Bancroft of performance on Stone's part of his obligations under the contract; nor is it an action for damages sustained by the plaintiff by reason of any such prevention, or of any other breach of the contract by Bancroft. On the contrary, it is, as has been shown, an action on the contract to recover the amount of salary, for a certain period, therein provided for, based entirely on the alleged performance by Stone of all of his obligations thereunder, but which allegation of performance the proof wholly fails to sustain. But, above and beyond this, we are of opinion that the contract upon which the action is based, rightly construed, did not confer upon Stone the right to hold Bancroft primarily and individually liable for the monthly salary thereby provided for. We are aware that department 1 of the supreme court of California held to the contrary in the case already cited, but that the opinion in that case did not have the unanimous approval of that court is shown by the dissent of the chief justice from the order denying the hearing of the case by the court in bank. 112 Cal. 660, 44 Pac. 1069. In construing the contract in question, Mr. Justice Garoutte, in delivering the opinion in that case, said:

"We think the only fair interpretation to be given to this contract is that Bancroft was to pay Stone three hundred and fifty dollars per month for his services. There is but a single theory that can be advanced looking to a contrary construction, and that is to the effect that this contract beween Bancroft and Stone constituted them partners (Stone possessing a one-tenth interest in the partnership), and that, consequently, the salary of said Stone was to be paid by the partnership. Upon a mere cursory examination of the contract, it is plainly evident that it does not, and was never intended to, create a partnership between these two parties. This is patent from the fact that it was contemplated in the writing itself that in the near future the History Company was to be incorporated. It is doubly apparent when we consider that the one-tenth interest in the property given by Bancroft to Stone failed to vest any absolute title in him, but was dependent upon conditions, and liable to be

forfeited, and revert to Bancroft, at any moment. That Stone had no such interest in this business as to constitute him a partner is further made plain when we look at the provision of the contract wherein it is expressly stipulated that, if Stone should die within five years from its date, then only one-half of the one-tenth interest should pass to his heirs. To hold these parties partners under the agreement would make Stone's salary dependent upon the profits of the business. There is nothing contained therein to indicate any such intention, and it is certainly not so provided. We conclude that the contract should be construed as a contract of hiring of Stone by Bancroft at an agreed price of three hundred and fifty dollars per month. There are no other matters of law raised by the demurrer of sufficient importance to demand our attention. Within a few months after the aforesaid agreement was entered into, the History Company was incorporated with a capital stock of one hundred shares, ten of which were issued to Stone, in pursuance of the agreement, and he was thereupon elected vice president of the corporation. Prior to the agreement with Stone and the subsequent incorporation, Bancroft was the sole owner of the business, conducting it under the name of the History Company. For several years after incorporation the business progressed amicably and prosperously, and then differences arose. No salary was forthcoming, and this litigation resulted. It is now insisted by appellant that during the fourteen months covered by this litigation respondent is not entitled to any salary, for the reason that he performed no service. It must be borne in mind that this action is not one for damages based upon the breach of a contract of hiring, but is an action based upon the contract itself, upon an express promise to pay, and in this regard the complaint was advisedly framed; for the evidence of both the plaintiff and defendant expressly shows that he (Stone) was never discharged from his employment, and, if he was hired for a term of ten years at a monthly salary, until he was discharged by his employer, or voluntarily gave up the employment, we know of no legal reason why his employer's promise to pay is not binding and enforceable in an action at law."

We are precluded from treating either the judgment in the case just referred to or the judgment of the trial court in the second action, above referred to, as an estoppel, for the reason that neither judgment is in any manner pleaded as such, and both were admitted in evidence for the express and only purpose of showing performance by Stone of his part of the contract up to the time of the commencement of the present action. But, as a precedent, the opinion of the supreme court of the state, in the case cited is entitled, as are all of its opinions, to great respect. The present case, however, involves the interpretation of a contract not in any way dependent upon the construction of any state law, and, that being so, we are not at liberty to follow the decision of that court construing the contract if such construction does not meet with our approval, but are bound to exercise our independent judgment. Lane v. Vick, 3 How. 464; Watson v. Tarpley, 18 How. 517; Carpenter v. Insurance Co., 16 Pet. 495; Amis v. Smith, Id. 303; Butz v. City of Muscatine, 8 Wall. 575; Oates v. Bank, 100 U. S. 239; Railroad Co. v. National Bank, 102 U. S. 14; Liverpool & G. W. Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469. The contract in question shows upon its face that the business and property constituting the subject of it, and which was then owned and conducted by Bancroft, was then carried on by him under the name of the History Company. In that business and property Bancroft, by the contract, conveyed to Stone an undivided one-tenth interest; the language being: "The said Bancroft hereby sells and assigns to the said Stone a one-tenth interest in the said History Company, plates, paper, stock, money, out-

standing accounts, or other property of said company." Then follow the conditions upon which the transfer of that interest is made. The contract expressly recites that the business which had formerly been conducted as the "Bancroft's Works Department of A. L. Bancroft & Co." and then being conducted as the "History Company," and in the conducting of which Stone had rendered valuable services, was shortly to be incorporated under the latter name, pursuant to the laws of the state of California. The consideration for the conveyance of the one-tenth interest was, as shown by the contract, not only the "valuable services" theretofore rendered by Stone "in conducting the publication and sale of the historical works of the said Bancroft," but also his services for at least the next succeeding 10 years; not only in the publication and sale of the historical works of Bancroft, but also in conducting such other business as should from time to time be taken up and entered into by the History Company; for the conveyance of the one-tenth interest to Stone was by the contract expressly declared to be made upon the conditions that "the said N. J. Stone is to devote his whole time and best energies, so far as his health and strength shall permit, for a period of not less than 10 years from the date of this agreement, to the publication and sale of the historical works of H. H. Bancroft, and of such other works, and conduct such other business, as may be from time to time taken up and entered into by said History Company; and the said Stone agrees not to enter into or engage in, directly or indirectly, any other mercantile or manufacturing business, or in any other business or occupation, which shall in any wise absorb his mind and strength, or interfere with his interest or efforts on behalf of the said History Company, during the said term of ten years. Upon the incorporation of the History Company one-tenth of the whole number of shares shall be issued and delivered to the said N. J. Stone, but, should the said Stone fail in any wise to carry out this agreement, or any part thereof, in its full letter and spirit, then the said one-tenth interest in the said History Company shall be forfeited, and revert to the said H. H. Bancroft: provided, and it is distinctly understood and agreed, that, in case of the death of the said N. J. Stone before the expiration of five years from the date of this agreement, the said Stone having fulfilled all the conditions of this agreement up to that time, then one-half of the said one-tenth interest of the said Stone in the History Company shall go to his heirs, and be their property unconditionally; and, in the event of the death of the said Stone at any time after the expiration of five years from the date of this agreement, the terms hereof having been fully complied with, then the whole of the said one-tenth interest shall belong to his heirs unconditionally." Can there be any doubt that when this contract was executed Stone thereby became the owner of an undivided one-tenth of the business and property of the History Company, subject only to the conditions therein stated, and that Bancroft remained the owner of the other nine-tenths? We think not. From that time until the incorporation of the company, was not Stone entitled, by virtue of the contract, to one-tenth of the profits, if any, of the business? Undoubtedly so. And when the company

was incorporated, and Stone's proportion of its stock issued to him, did he not continue to be entitled to his share of the profits of the business? Undoubtedly so. The 10-years services that Stone, by the contract, agreed to render were not to be rendered to Bancroft individually, but, as is expressly declared in the contract itself, in the publication and sale of the historical works of Bancroft, and of such other works and of such other business "as may be from time to time entered into by said History Company." The obligation imposed by the contract on Stone not to engage in any other business or occupation was limited to such other business or occupation as would "interfere with his interest or efforts on behalf of the said History Company." The services thus required by the contract to be performed by Stone were, therefore, confined entirely to the business of the History Company, in which he had an undivided one-tenth interest, subject to the conditions accompanying its conveyance to him. His joint interest in the business entitled him to his proportionate share of the profits, the ascertainment of which necessarily depended upon the previous ascertainment and payment of the expenses of conducting the business. There is certainly nothing in the contract indicating any intention on the part of either of the parties thereto that Stone should be exempt from any part of the expenses incurred in conducting the business in the profits of which he was legally and justly entitled to share. It would be extraordinary if there had been. By a statute of California partnership is defined to be "the association of two or more persons for purposes of carrying on business together and dividing the profits between them." Civ. Code Cal. § 2395. No express stipulation for dividing the profit and loss is necessary, as that is an incident to the prosecution of the joint business. Pars. Cont. p. 57; Bloomfield v. Buchanan, 13 Or. 108, 8 Pac. 912; Richards v. Grinnell, 63 Iowa, 44, 18 N. W. 668. It seems to us impossible to successfully deny that from the time of the execution of the contract in question to the time of the incorporation of the History Company the respective parties to the contract were entitled and bound to share in the profit and loss of the business of the company in proportion to their respective interests, for, beyond question, they owned the property and business jointly, and were conducting it jointly. They were therefore partners therein. The fact that the respective parties contemplated a speedy incorporation of the company, which intention was expressly stated in the contract, in no way altered the character that the law attached to the agreement under which they meanwhile conducted the business. Nor did the conditions specified in the contract, upon the happening of which there would be a forfeiture on the part of Stone of the whole or a part of his interest in the business of the company, affect the relationship of the parties while it existed. Hills v. Bailey, 27 Vt. 548; Petrakion v. Arbeely (Com. Pl.) 26 N. Y. Supp. 731; Campbell v. Sherman, 55 Hun, 609, 8 N. Y. Supp. 630. As by the execution of the contract Stone became a partner in the business, he would not, under the well-settled law of partnership, have been entitled to any salary for services rendered the firm, unless expressly provided for. In the present case, as by the

articles of agreement Stone was made the manager of the business, and was required to devote his entire time to it, and was prohibited from engaging in any other business or occupation that would interfere with his efforts on behalf of the History Company, it was provided that he should receive a salary of $350 a month for his services. Such a provision is not at all uncommon in partnerships. A similar provision appears in the case of Weaver v. Upton, 29 N. C. 458, which case is, in principle, exactly similar to the present one. There, Weaver and Upton had leased of one McKensie a tract of land for three years, in which to mine for gold, and the lessees had entered into possession. Upton was to work 20, and Weaver 4, hands, "bearing a proportionable part of the expense attached thereto." The agreement between them further provided that "the said Upton, of the first part, bargains and agrees to give me, the said Weaver, of the second part, four hundred and fifty dollars to manage the business, which I agree to manage according to the best of my judgment." The court said:

"It seems to us that the agreement was one of partnership; and, the law being well settled that the acting and business partner is never entitled to claim any pay of the firm for his services, unless he stipulates for it in the articles of co-partnership or otherwise, the parties therefore agreed that Weaver should manage the business, and Upton, the other partner, agreed to give him $450 'to manage the business.' Weaver was to bear his proportion of the expense of managing and working the mine. The salary of the superintendent was a part of the expense of the firm. And the firm ought, according to the true construction of the articles, to bear this expense in proportion to the number of hands each partner worked in the mine. The words, 'the said Upton bargains and agrees to give me, the said Weaver, four hundred and fifty dollars to manage the business,' only denote the assent of Upton that Weaver, although a partner, should be paid for his services $450.00. The parties were stipulating concerning the partnership business and the terms on which it was to be carried on; and, among others, that Upton bargained and agreed to let Weaver have $450.00 for his services that year. It seems to us that it would be against justice and right to construe the covenant to be an agreement by Upton that he would pay that sum out of his own pocket. We think that it was an item in the expense account of the firm, and that the firm should pay it."

It will be noticed that in the case just cited the contract recited that Upton agreed to give Weaver $450 to manage the business, but the court held—and, we think, very properly held—that, as the salary of the superintendent was a part of the expense of the firm, the firm ought, according to the true construction of the articles of agreement, to be required to pay it. In the contract here in question there is no statement that Bancroft agrees to pay Stone a salary of $350 a month for the services he is thereby required to render in conducting the business of the History Company, but the provision is, as has been seen, that "the salary of the said Stone shall be $350 a month,"—manifestly to be paid out of the business, to which both parties interested should contribute in proportion to their respective interests, and for which both of the parties interested in the business would be liable in like proportions, if the services provided for were rendered, and the business was unable to pay it; and this, not only while the business was conducted as a partnership, but also after it was conducted as a corporation of the state of California, for, as stockholders therein, each of the parties in interest was not only

entitled to his proportion of the profits of the corporate property and business, but liable as well for his proportion of the corporate obligations. We entertain no doubt that, if Bancroft prevented, directly or indirectly, Stone from performing the services in and about the business of the History Company provided for on his part by the contract, or committed any other breach thereof to Stone's injury, the latter would have his action against Bancroft for such damages as he sustained. But such, as has been shown, is not the present action. The judgment is reversed, and cause remanded to the court below, with directions to dismiss the action at the plaintiff's cost.