## HAMBLY v. BANCROFT.

### (Circuit Court, N. D. California. November 15, 1897.)

#### No. 12,385.

1. ACTION FOR SALARY—PARTNERSHIP.

S. made an agreement with defendant by which, in consideration of past services rendered by S. to a certain business about to be incorporated as the H. Co., defendant sold to him a one-tenth interest in that company and in its assets; and S. agreed, for at least 10 years to come, to devote his entire attention to the business of the company. Upon the incorporation of the company, S. was to receive one-tenth of the stock, subject to forfeiture for his breach, and subject to defeasance, as to one-half, in case of his death within five years. The agreement added, "The salary of the said S. shall be $350 a month." *Held*, that the contract was one of employment, and not of partnership, and that defendant was personally liable for S.'s salary.

2. JUDICIARY ACT—STATE LAW AS RULE OF DECISION.

Section 34 of the judiciary act of 1789 (1 Stat. 92; Rev. St. § 721), providing that "the laws of the several states * * * shall be regarded as rules of decision * * * in the courts of the United States * * *," does not apply to a decision of a state court determining the construction of a contract.

This was an action at law by H. B. Hambly against H. H. Bancroft to recover the sum of $9,833.33, alleged to be due as salary owing under a contract of employment. Demurrer that the complaint does not state facts sufficient to constitute a cause of action.

Reddy, Campbell & Metson, for plaintiff.

Page, McCutchen & Eells, for defendant.

MORROW, Circuit Judge. The present suit was removed to this court on June 21, 1897, from the superior court of this state in and for the city and county of San Francisco. The plaintiff is a citizen of this state; and the defendant, a citizen of the state of Massachusetts. The action is brought by the plaintiff, H. B. Hambly, as the assignee of N. J. Stone, to recover the sum of $9,833.33, alleged to be due by the defendant, H. H. Bancroft, as salary owing to Stone under a contract of employment. The case now comes up on a demurrer to the complaint, it being claimed that the facts stated in the complaint are not sufficient to constitute a cause of action. The complaint sets out, substantially, that on the 20th day of August, 1886, N. J. Stone and the defendant, H. H. Bancroft, made and entered into the following agreement:

"That in consideration of the valuable services done by the said Stone in conducting the publication and sale of the historical works of the said Bancroft,— the business formerly being conducted as the Bancroft's Works Department of A. L. Bancroft & Co., but now being done and shortly to be incorporated under the laws of the state of California as the History Company,—the said Bancroft hereby sells and assigns to the said Stone a one-tenth interest in the said History Company, plates, paper, stock, money outstanding, accounts, or other property of said company, upon the following conditions: The said N. J. Stone is to devote his whole time and best energies, so far as his health and strength shall permit, for a period of not less than ten years from the date of this agreement, to the publication and sale of the historical works of H. H. Bancroft, and of such other works, and conduct such other business, as may be from time to time taken up and entered into by said History Company; and the said

Stone agrees not to enter into or engage in, directly or indirectly, any other mercantile or manufacturing business, or in any other business or occupation which shall in any wise absorb his mind and strength, or interfere with his interest or efforts on behalf of the said History Company, during the said term of ten years. Upon the incorporation of the History Company, one-tenth of the whole number of shares shall be issued and delivered to the said N. J. Stone; but should the said Stone fail in any wise to carry out this agreement, or any part thereof, in its full letter and spirit, then the said one-tenth interest in the said History Company shall be forfeited, and revert to the said H. H. Bancroft: provided, and it is distinctly understood and agreed, that, in case of the death of the said N. J. Stone before the expiration of five years from the date of this agreement, the said Stone having fulfilled all the conditions of this agreement up to that time, then one-half of the said one-tenth interest of the said Stone in the History Company shall go to his heirs, and be their property, unconditionally; and in the event of the death of the said Stone at any time after the expiration of five years from the date of this agreement, the terms hereof having been fully complied with, then the whole of the said one-tenth interest shall belong to his heirs, unconditionally. The salary of the said Stone shall be $350 a month. The copyright of the said historical works belongs exclusively to the said Bancroft, and shall be fifty cents a volume for the History and Diaz, and twenty cents on the little History of Mexico.

"Signed in San Francisco the twentieth day of August, 1886.

"H. H. Bancroft.<br>"N. J. Stone.

"Witness: W. N. Hartwell."

It is further averred that N. J. Stone duly performed all the conditions of said contract on his part to be kept and performed, and that he is now, and always has been, ready and willing to perform all the terms and conditions of said contract on his part to be kept and performed, but that said defendant has failed and neglected to perform the terms and conditions of said contract upon his part to be kept and performed, and has failed and neglected and refused to pay or cause to be paid to the said Stone the salary mentioned in said contract, and still refuses to pay said salary, although often requested so to do; that no part of said salary has been paid to said Stone from the 1st day of April, 1894, to the 20th day of August, 1896; that prior to the commencement of this action, to wit, on the 13th day of June, 1896, said Stone sold, assigned, and transferred to the plaintiff herein all of his right, title, and interest in any moneys then due or thereafter to become due under the said contract with the said defendant as hereinbefore set forth; that nothing has been paid by defendant to plaintiff on account thereof. It is contended upon this demurrer by counsel for the defendant that the parties, by the terms of the contract set out in the complaint, created a partnership, and not a contract of employment, and that, therefore, the present suit, being predicated upon a contract of employment, cannot be maintained. On the other hand, it is contended by counsel for the plaintiff that the contract sued upon is one of employment, and that the supreme court of this state, in a case involving the same contract, and between the parties to it, so decided, and that this decision is binding on this court. The interpretation of the contract sued on in this case was involved in the suit of Stone v. Bancroft, brought in the state court. Stone sued Bancroft in the state court for his salary at the contract rate of $350 per month for the period of 14 months. He re-

covered judgment, and the case was appealed to the supreme court, where the judgment was affirmed. 112 Cal. 652, 44 Pac. 1069. The supreme court held that the contract was one of employment, and not of partnership, and that the action to recover his salary was a proper one, instead of a suit for damages for breach of contract, in view of the fact that the evidence introduced in that case showed that Stone had never been discharged by Bancroft from his employment under the contract.· That suit was brought by Stone to recover his salary for the period extending from January 1, 1892, to May 1, 1893. The present suit is brought to recover his salary from April 1, 1894, to August 20, 1896.

The first question which arises is whether the interpretation placed by the supreme court of this state on the contract sued upon is binding on this court, under the thirty-fourth section of the judiciary act of 1789 (1 Stat. 92; section 721, Rev. St.). That section provides that:

"The laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

The expression "laws of the several states" includes the decisions of the state courts construing the laws. Swift v. Tyson, 16 Pet. 1. The general rule as to when decisions of the state courts, under the above-quoted section, are binding on the federal courts, and when they are not, is well stated in the case just cited, in the following language:

"In all the various cases which have hitherto come before us for decision, this court have uniformly supposed that the true interpretation of the thirty-fourth section limited its application to state laws, strictly local; that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intraterritorial in their nature and character. It has never been supposed by us that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves; that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. And we have not now the slightest difficulty in holding, that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence. Undoubtedly, the decisions of the local tribunals upon such subjects are entitled to, and will receive, the most deliberate attention and respect of this court; but they cannot furnish positive rules or conclusive authority by which our own judgments are to be bound up and governed."

It is true that in the case cited the supreme court were considering and interpreting a negotiable instrument in the light of the principles of commercial law, but their language is equally applicable to the interpretation of ordinary contracts. Subsequent de-

cisions only tend to reaffirm this rule, and in Lane v. Vick, 3 How. 464, it was said:

"With the greatest respect, it may be proper to say that this court do not follow the state courts in their construction of a will or any other instrument, as they do in the construction of statutes."

See, also, Carpenter v. Insurance Co., 16 Pet. 495; Butz v. City of Muscatine, 8 Wall. 575; Oates v. Bank, 100 U. S. 239; Watson v. Tarpley, 18 How. 517; Amis v. Smith, 16 Pet. 303, 314; Railroad Co. v. National Bank, 102 U. S. 14, 54; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 443, 9 Sup. Ct. 469.

The only question involved in the case at bar, as in the suit of Stone v. Bancroft in the state court, is one of the interpretation of the contract sued upon. No rule of property can be said to be involved, nor does the decision in the case depend upon the construction given by the state court, in the case referred to, to the laws of this state. The question is confined to the single inquiry as to the interpretation to be given the contract sued on; that is, whether it is one of hiring or one of partnership. This obviously calls for the independent judgment of the court. Reverting, therefore, to the ground of demurrer, that the complaint does not state facts sufficient to constitute the cause of action sought to be made, it is plain that the disposition of this question depends upon the interpretation to be given to the contract set out in the complaint. Looking at the instrument without the aid of any extraneous evidence, it is difficult to escape the conclusion that it was drawn up as, and expresses, a contract of employment, and not of partnership. Stone agreed with Bancroft that he would render certain services in connection with the publication and sale of the historical works of Bancroft, and of such other work, and conduct such other business, as might be, from time to time, taken up and entered into by the History Company, for which services he was to receive a monthly salary of $350. He was engaged by Bancroft, and the latter agreed to pay him. Stone, in return, agreed "to devote his whole time and best energies, so far as his health and strength shall permit, for a period of not less than ten years from the date of the agreement," to the purposes and objects above specified. The period of service was distinctly stated and agreed upon to be not less than 10 years, and Bancroft, fully cognizant of this stipulation, nevertheless agreed to pay Stone during that period, for the services rendered under the contract, the sum of $350 a month. This Bancroft agreed to do, although it is recited in the agreement for the employment of Stone's services that the History Company, so-called, was shortly to be incorporated. Therefore, from the terms of the contract itself, Bancroft deliberately engaged and contracted that Stone should render services to himself and to the History Company, when it should be incorporated, for a certain period, specified at not less than 10 years, and for a stipulated salary. The fact that, upon the incorporation of the company, Stone was to render his services, under the contract with Bancroft, to the company, does not, in law, relieve Bancroft from his solemn engagement to pay Stone for the services called for by the contract, and which the latter was ready

and willing to render. It is immaterial whether the services were rendered to Bancroft personally, or to the History Company. It is enough that Stone was engaged by Bancroft to do certain work, and that he entered upon the discharge of his duties at the solicitation of Bancroft, and upon his written promise to pay for such services. The company might receive, under the terms of the contract between Stone and Bancroft, the benefit of Stone's services, and yet, in law, Bancroft, by virtue of his written promise, be liable for the payment of the salary. That one may engage the services of another to be rendered to a third party is elementary law. 1 Add. Cont. (3d Am. Ed.) § 38; Craig v. Fry, 68 Cal. 363, 9 Pac. 550; Civ. Code Cal. § 1965. One can search the contract in vain for a statement or admission that Stone was hired or to be employed by the History Company upon its incorporation, and was to be paid by the company for the services he rendered under his contract with Bancroft. On the contrary, a careful reading of the agreement leads to the conclusion that Stone was to be paid by Bancroft, with whom he entered into the contract.

It is claimed, however, that the contract was one of partnership, and that, by the terms of the contract, Stone was to get a one-tenth interest in the History Company, and that, therefore, the salary to Stone was intended to be paid by the partnership, and not by Bancroft personally. But the difficulty about this contention is that Stone was not given the one-tenth interest in consideration of the services called for under the contract. This one-tenth interest was for past services, which had nothing to do with those to be performed under the contract sued upon. It was:

"In consideration of the valuable services done by the said Stone in conducting the publication and sale of the historical works of the said Bancroft, the business formerly being conducted as the Bancroft Works Department of A. L. Bancroft & Co., but now being done and shortly to be incorporated under the laws of California as the History Company."

This transfer of a one-tenth interest was, however, qualified by a stipulation in the agreement that:

"Should the said Stone fail in any wise to carry out this agreement, or any part thereof, in its full letter and spirit, then the said one-tenth interest in the said History Company shall be forfeited, and revert to the said H. H. Bancroft."

There was a further stipulation in the agreement that, should Stone die before the expiration of five years from the date of the agreement, his heirs would only get one-half of the one-tenth interest referred to. Outside of this transfer of a one-tenth interest for past services, there is nothing in the language or terms of the contract sued upon which would justify the interpretation that it was ever intended to be, and is, in legal effect, a contract of partnership. The word "partners" is not once used, nor, in fact, does the instrument contain any expressions from which it could be reasonably and fairly deduced that the parties considered that they were entering into partnership relations. Indeed, the recital in the instrument that the History Company, so-called, was shortly to be incorporated, would seem to be inconsistent with the idea that Stone and Bancroft considered that they were entering into a partner-

ship. The supreme court of this state, in the case before referred to, involving this agreement, took the view, as stated, that the contract was one of employment, and not of partnership. While it is true that this decision, under the authorities heretofore cited, is not binding on this court, involving, as it does, merely the interpretation of an instrument, still it is entitled to great respect. Swift v. Tyson, supra. The interpretation of the contract in question arose, as in the case at bar, upon a general demurrer to the complaint. The supreme court, in affirming the decision of the trial court overruling the demurrer, used the following language:

"We think the only fair interpretation to be given this contract is that Bancroft was to pay Stone three hundred and fifty dollars per month for his services. There is but a single theory that can be advanced looking to a contrary construction, and that is to the effect that this contract between Bancroft and Stone constituted them partners (Stone possessing a one-tenth interest in the partnership), and that consequently the salary of said Stone was to be paid by the partnership. Upon a mere cursory examination of the contract, it is plainly evident that it does not, and was never intended to, create a partnership between these two parties. This is patent from the fact that it was contemplated in the writing itself that in the near future the History Company was to be incorporated. It is doubly apparent when we consider that the one-tenth interest in the property given by Bancroft to Stone failed to vest any absolute title in him, but was dependent upon conditions, and liable to be forfeited and revert to Bancroft at any moment. That Stone had no such interest in this business as to constitute him a partner is further made plain when we look at the provision of the contract wherein it is expressly stipulated that, if Stone should die within five years from its date, then only one-half of the one-tenth interest should pass to his heirs. To hold these parties partners under the agreement would make Stone's salary dependent upon the profits of the business. There is nothing contained herein to indicate any such intention, and it is certainly not so provided. We conclude that the contract should be construed as a contract of hiring of Stone by Bancroft at an agreed price of three hundred and fifty dollars per month." Stone v. Bancroft, 112 Cal. 652, 655, 44 Pac. 1069.

The view taken, and thus expressed, by the supreme court of this state, accords with the view I take of the legal effect of the contract in question. In my opinion, the plaintiff's cause of action is legally and properly based upon the contract as one of employment; and the complaint, in my judgment, states facts sufficient to constitute a cause of action. The demurrer will be overruled, with leave to the defendant to answer within 10 days, if he shall be so advised.