## CLARK v. BELT.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1915.)

No. 4014.

1. CONTRACTS ⊂⇒10—VALIDITY—MUTUALITY.
    A contract for an exchange of real estate, although conditioned on the acceptance of one of the parties after examination of the property of the other, is not void for want of mutuality, where after such examination he accepts and at the request of the other party makes advance payment of the difference agreed upon in the contract between the value of the two properties.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. ⊂⇒10.

    Mutuality in contracts, see notes to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543; Oakland Motor Car Co. v. Indiana Automobile Co., 121 C. C. A. 326.]

2. CONTRACTS ⊂⇒145—CONSTRUCTION AND OPERATION—PLACE OF MAKING CONTRACT.
    The place of a contract is the place at which the last act was done by either of the parties essential to a meeting of minds.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 728; Dec. Dig. ⊂⇒145.]

3. COURTS ⊂⇒372—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.
    In the absence of any state statute on the subject, the measure of damages for breach of a contract to convey land is a matter of general law, upon which the federal courts exercise their independent judgment.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. ⊂⇒372.

    Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union &

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

4. VENDOR AND PURCHASER ⬤≈351—ACTION BY PURCHASER FOR BREACH OF CONTRACT—MEASURE OF DAMAGES.

Under the rule of the federal courts, the measure of damages for breach of a contract to convey land is the difference between the contract price and the market price at the time of the breach.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec. Dig. ⬤≈351.]

5. APPEAL AND ERROR ⬤≈854—HARMLESS ERROR—ERRONEOUS GROUND OF DECISION.

A judgment will not be reversed because rendered on an erroneous theory on proceedings in error by the adverse party, where the findings of fact on which it was based entitled the prevailing party to a larger judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. ⬤≈854.]

Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by Denton Deo Belt against Stanley L. Clark. Judgment for plaintiff, and defendant brings error. Affirmed.

Sterling & Clark, of Redfield, S. D., for plaintiff in error.

Tinley, Mitchell & Pryor, of Council Bluffs, Iowa, and W. F. Bruell, of Redfield, S. D., for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

POPE, District Judge. Belt owned property in the city of Essex, Iowa. Clark had a farm in Spink county, S. D. They exchanged. By the terms of their agreement the South Dakota farm was to be taken at $32,000, subject to a mortgage of $16,800, thus leaving the net equity $15,200. The Iowa town property was placed at $18,500, with a mortgage of $4,000, making the net equity $14,500. To cover the difference of $700 in the two equities, resulting from the valuations thus placed, Belt was to pay Clark $700 in cash. The contract gave Belt one-third of all crops raised on the farm, evidently for the current year, 1908, but Belt was to assume a contract outstanding for 150 acres of breaking at the rate of $2.75. While there is some ambiguity in the contract as to the date when the papers were finally to be delivered, it seems reasonably clear that November 1, 1908, was the final date for such delivery. The contract was made by an agent of Clark on his behalf, and was subject to his approval of the trade, as it was subject also to an inspection of the South Dakota land by Belt. Clark subsequently approved the trade, but upon the further condition that Belt was to let Clark have $800 on or before July 2, 1908, and thus in advance of the exchange of deeds. This amount, it will be noted, was $100 more than the cash payment which Belt ultimately was to make to Clark, but the difference was to be protected by a lien given by Clark to Belt on part of the town property received on the exchange. This proposition was agreed to by Belt after an inspection by him of the

South Dakota property, and the sum of $800 was, pursuant to such agreement, paid to Clark by Belt in July, 1908. On October 31, 1908, Belt tendered Clark the necessary papers covering the town property, and also the sum of $700 as stipulated, and demanded a deed to the South Dakota property in return. Clark had, however, previous to this, transferred the property to another, and refused to make the deed in return. Following the refusal of Clark to make title, Belt filed this suit for damages for the breach of the contract. The damages claimed were in three items:

(a) The $800 advanced in July, 1908, and for which, with interest, a return is demanded.

(b) A number of items representing the value of one-third of the crops raised in 1908 on the South Dakota property, and aggregating $1,517.53.

(c) The difference at the date of the breach between the value of the South Dakota property and the Iowa property. Upon this point the allegation of the complaint is that the South Dakota property was, at the date of the breach, worth $25,184, with an incumbrance of $16,-800, leaving an equity, which would have come to the plaintiff had the trade gone through, of $8,384. The actual value of the Iowa property at the date of the breach is alleged to have been $8,500, allowing against which an incumbrance of $4,000, there was left $4,500 as the equity which would have gone to the defendant, or a difference of $3,884 in favor of plaintiff had the trade been consummated.

These three items aggregate $6,201.33, for which judgment was asked, with interest from November 1, 1908. The answer sets up various allegations of fraud by Belt in pointing out the town property, and which, it is claimed, relieved Clark from a compliance with his contract. There is in the answer a tender back of the $800 paid in July, 1908. Upon the trial, which by stipulation was to the court, there were findings against the defendant on the issue as to fraud, and a finding that plaintiff should recover. The court in assessing the damage allowed the $800 advanced, and also the value of one-third of the crops grown on the land in the season of 1908, which value was fixed at $1,207.06. The court declined to allow anything for the alleged loss to plaintiff as contained in allegation (c) above set forth. There is a finding by the court, however, that on or about September 1, 1908, the South Dakota equity was worth $8,384, and the Iowa equity amounted to $3,800, thus leaving a balance of $4,584 in favor of the South Dakota property had the trade been effected.

There is no bill of exceptions in the case, so that the only question is as to the sufficiency of the facts found to support the judgment. R. S. 700. In the absence of the evidence, of course, the findings of fact must be deemed to have been properly supported at the trial.

[1] The point is made against the judgment below that the arrangement was void for lack of mutuality in that the acceptance of the South Dakota property by plaintiff was left dependent upon his being satisfied with it upon inspecting it, and particularly because the contract provided that "if found [by Belt] to be otherwise than as represented or as understood by said second party [Belt] this agreement to

be null and void." It is urged that a contract leaving it to the understanding of one of the parties as to what was represented was without binding effect upon him, and bound the one without binding the other, and was thus lacking in mutuality. The trade, however, was not closed upon that basis. It appears from the record that plaintiff did inspect the South Dakota land, and was satisfied therewith, and that defendant thereupon made a proposition by which the trade was closed upon the further consideration that $800 should be paid down in July, instead of awaiting the exchange of papers. While the original transaction was more or less one of negotiation on each side, there was created by the later transaction a condition binding upon all concerned, and a final situation characterized by mutuality.

It is also said that the contract is too indefinite for enforcement; that it fails, for example, to state in what year the crops referred to in the contract were to be raised; that it does not prescribe the date for the delivery of the deeds; that it is not sufficiently definite as to when the breaking of the 150 acres was to be done, or as to the incumbrance on the Essex property. The trial court, with all the surrounding circumstances before it, seems to have had no difficulty in ascertaining that the year for which crops mentioned in the contract were to be raised was the current year, to wit, 1908; that the date by which exchange of deeds was, at all events, to be effected, was November 1, 1908, and that as to the other matters upon which uncertainty is contended for, there was no difficulty in ascertaining the intent of the parties. We entertain no doubt of the correctness of the court's findings upon these points. Indeed, in the absence of the testimony, we are in no position to question them.

It is urged that there should have been no judgment in favor of plaintiff for the $800 advanced for the reason that this amount was tendered before suit. There is no proof, however, of a tender, and no finding of such, and it is not pretended that the tender included interest, so that there was no obligation on plaintiff to have accepted this in satisfaction of his claim.

The chief contention, however, upon the record is one of more substance, and goes to the amount of damages as found by the court. As we have seen, the damages allowed was the $800 item, with interest from July, 1908, and also $1,207.06, the value of one-third of the crops grown upon the South Dakota farm in the summer of 1908. The first item was, in view of what we have said, clearly a proper allowance. But, what as to the second? This involves a consideration of questions not entirely free from difficulty. The primary question in determining this is whether this was a South Dakota or an Iowa contract. If a South Dakota contract, the matter of damages was controlled by the following statute of that state:

"The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid, and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

This statute is cited and applied in Dal v. Fischer, 20 S. D. 424, 107 N. W. 534. If it be a South Dakota contract, then the whole matter is governed by the statute above quoted, for in the presence of a state statute regulating the measure of damages, the duty of the federal courts ends with the enforcement of such statute. Under this statute, the only amount recoverable, unless there was bad faith, is the price paid, to wit, $800, with interest. In the presence of bad faith, which, however, is not here in terms found, there would be added the difference between the price agreed to be paid to wit, the Iowa property and $700, and the value of the estate agreed to be conveyed, to wit, the South Dakota property and one-third of the crop. Since the judgment of the court does not conform to either of these measures of damage, it is clearly erroneous if tested by the South Dakota statute. But is this a contract of that state? To determine this, we must, of course, go to the findings, and while these are lacking in fullness, it seems reasonably clear that it is an Iowa contract.

[2] The test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of minds. Until this act was done there was no contract, and upon its being done at a given place the contract became existent, and became existent at the place where the act was done. Until then there was no contract. 2 Wharton on the Conflict of Laws (3d Ed.) § 422a. Tested by this rule, this was an Iowa contract. Clark ratified the act of his agent only upon the condition that Belt should agree to something further, to wit, the advancement in July, 1908, of $800 towards the purchase money. Until this was accepted by Belt there was no contract. The findings show that Belt at all times during 1908 resided in Iowa, so that presumably any acceptance by him was in Iowa, and thus the contract was born in Iowa. The same result is reached by testing the matter from the standpoint of where the obligation was to be performed, for this, as to the effect of a breach, is the material consideration where the performance is to be at a place different from the place of the contract. In Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245, it is said:

"Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought. Andrews v. Pond, 13 Pet. 65 [10 L. Ed. 61]."

The performance by Clark, for the default of which he became liable in damages to Belt, was the delivery of a deed to Belt. As above stated, Belt was a resident of Iowa all through 1908, so that the delivery to him was there, and the performance by Clark was thus to be in Iowa. So that, from either standpoint, whether the place of the making of the contract, or the place of performance, its locus was in Iowa.

If, as we have seen, this be an Iowa contract, then the South Dakota statute upon the measure of damages is to be eliminated from consideration, and we must seek elsewhere for the rule fixing the amount. There is no statute in Iowa upon the subject. It seems to be mutually

223 F.—37

conceded in the briefs that the state rule in Iowa is the same as in South Dakota. This we deem far from clear. The following line of authorities from the Iowa Supreme Court indicate a more liberal rule in favor of the vendee than is prescribed by the Dakota statute: Foley v. McKeegan, 4 Iowa, 1, 12, 66 Am. Dec. 107; Sweem v. Steele, 5 Iowa, 352; Sawyer v. Warner, 36 Iowa, 333; Burdick v. Seymour, 39 Iowa, 452; Yokum v. McBride, 56 Iowa, 139, 142, 8 N. W. 795; Warren v. Chandler, 98 Iowa, 238, 242, 67 N. W. 242; Conner v. Baxter, 124 Iowa, 219, 227, 99 N. W. 726; Eggert v. Pratt, 126 Iowa, 727, 102 N. W. 786.

[3] But we deem it unnecessary to enter upon a determination of the state rule in Iowa. The matter, in our judgment, is one of general jurisprudence, and upon it the federal courts exercise their independent judgment. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580; Railroad Co. v. National Bank, 102 U. S. 14, 14 L. Ed. 26; Hambly v. Bancroft (C. C.) 83 Fed. 444; Dygert v. Vt. Loan & Trust Co., 94 Fed. 913, 37 C. C. A. 389; Bancroft v. Hambly, 94 Fed. 975, 36 C. C. A. 595; L. Bucki & Son Lbr. Co. v. Fidelity & Deposit Co. of Md., 109 Fed. 393, 48 C. C. A. 436; Gordon v. Ware National Bank, Mass., 132 Fed. 444, 65 C. C. A. 580, 67 L. R. A. 550; Woldson v. Larson, 164 Fed. 548, 90 C. C. A. 422; Chicago & N. W. Ry. Co. v. Kendall, 167 Fed. 62, 93 C. C. A. 422, 16 Ann. Cas. 560; Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. (N. S.) 367; Norfolk & P. Traction Co. v. Miller, 174 Fed. 607, 98 C. C. A. 453; Western Union Telegraph Co. v. Burris, 179 Fed. 92, 102 C. C. A. 386; Mechanics' Natl. Bank v. Coleman, 204 Fed. 25, 122 C. C. A. 338; Hartford Fire Ins. Co. v. Chicago, Milwaukee & St. P. Ry. Co., 174 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84.

[4] The rule of the federal courts was stated as long ago as Hopkins v. Lee, 6 Wheat. 109, 118 (5 L. Ed. 218), as follows:

"In the assessment of damages, the counsel for the plaintiff in error prayed the court to instruct the jury that they should take the price of the land, as agreed upon by the parties, in the articles of agreement upon which the suit was brought, for their government. But the court refused to give this instruction, and directed the jury to take the price of the lands, at the time they ought to have been conveyed, as the measure of damages. To this instruction the plaintiff in error excepted. The rule is settled in this court that in an action by the vendee for a breach of contract on the part of the vendor, for not delivering the article, the measure of damages is its price, at the time of the breach. The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise the vendor, if the article has risen in value, would always have it in his power to discharge himself from his contract, and put the enhanced value in his own pocket. Nor can it make any difference in principle whether the contract be for the sale of real or personal property, if the lands, as is the case here, have not been improved or built on. In both cases, the vendee is entitled to have the thing agreed for, at the contract price, and to sell it himself at its increased value. If it be withheld, the vendor ought to make good to him the difference."

This has never been departed from in the United States courts, but was adhered to by the Supreme Court of the United States as recently as Harten v. Loffler, 212 U. S. 397, 29 Sup. Ct. 351, 53 L. Ed. 568, in

**579**

which case it is held that where the vendee sues for breach of a contract to sell real estate, and the benefit of the business and good will as well, the measure of damages is the difference between the purchase price and the market value. This we understand to be also the weight of state authority in the United States. Flureau v. Thornhill, 2 W. Bl. 1078, the case which in England confined damages strictly to the return of the purchase money with interest, has never found favor in this country. 2 Sutherland on Damages (3d Ed.) 579 et seq.; Arensten v. Moreland, 122 Wis. 167, 99 N. W. 790, 65 L. R. A. 973, 106 Am. St. Rep. 951, 2 Ann. Cas. 628.

Applying therefore, the rule in the federal courts, may the conclusion of the trial judge as to the matter of crops be sustained? The allowance of profits on crops, while withholding the loss to plaintiff arising out of the difference in value between the real estate to be received and that to be given in exchange, impresses us as illogical. If one is to be given, it would seem that both should be given. If plaintiff lost the profits on the crops, and if this, as the court held, was a legitimate item of damage, he, having also lost the difference in the value of the land, is entitled to recover that. The profits arising from the land itself belong to the plaintiff no less than the increment from the soil. Applying the federal rule to the finding, the plaintiff was entitled to recover just what he lost by defendant's default, i. e., the amount he would have received, less the consideration he would have had to pay to be entitled to receive it. The amount he would have received, had the trade gone through, was the South Dakota equity, worth $8,384, one-third of the crop, found by the court to be worth $1,207.06, and the $800, with interest advanced upon the purchase price. The expenditure he would have been called upon to make, had the trade gone through, was a transfer of the Iowa equity, valued at $3,800, and the $700 purchase price contracted for. We eliminate from consideration either way the sum for breaking the land, since it is not shown that the land was ever broken, or would ever have been broken, had the trade gone through. Casting up the foregoing items, it will be found that upon the law and the findings, plaintiff, Belt, is entitled to more than was given him by the trial court.

[5] It is true that he can have no relief on that question, for he has not appealed. It is, also true that the judgment below proceeded upon a wrong theory, in that it allowed items to plaintiff without making a corresponding charge against him, but while the process was wrong, the result attained was not in excess of what is right. Under R. S. § 700 (Comp. St. 1913, § 1668), the only question for our determination is whether the findings of fact justify the judgment. We find that they do so, and more. With that ascertained, our duty ends. The matter thereupon falls within the familiar rule that a wrong reason for a right conclusion does not justify disturbing the latter.

In reaching this conclusion we have not overlooked the contention of the defendant that the contract is an entire one, and that to allow the purchase price as a credit in behalf of defendant when there is awarded plaintiff only a part of the results of such purchase, in that the loss on the land is not awarded him, is, in effect, to divide the con-

tract into segments, and, contrary to the intention of the parties, to apply the purchase price proceeding from Clark in payment of less than plaintiff should receive under the contract. But this is not a matter of which defendant can complain. If, by reason of an error in the judgment below, of which plaintiff is not complaining, he has received less than should have been awarded him, that affords him no ground for exception. We hold that under a proper view of the matter the plaintiff, upon being charged with the consideration he would have had to pay, to wit, the payment of $700 and the giving of a deed covering his Iowa property, would have been entitled to receive the South Dakota property, and the profit on the crops, and also the payment back of $800. That he is getting less than this under the trial court's judgment is a matter for complaint, not by the defendant, but by plaintiff. The situation is one in which the contract is enforced as an entirety, but plaintiff in that enforcement has not gotten all to which he was entitled, and of this he is not complaining.

There seems to be some hint in the findings of the court that the award for crops was made upon the theory that plaintiff became, in July, 1908, the equitable owner of the property, and that as such owner the value of crops raised upon his land went to him. But that theory, carried out, would give him the entire value of the crops. This, however, is not a suit to recover as the owner, but to recover by virtue of a contract which the other party has broken. He had no equities save such as were conferred by his contract, and no ownership except as was thus given him.

Upon a consideration of the whole case, we are, for the reasons stated, of the opinion that the judgment below should be affirmed.

HOOK, Circuit Judge (dissenting). I do not think the conclusion of the court accords with good appellate practice. Belt sued Clark for breach of contract of sale and purchase of land in South Dakota and one-third of the crops of the year. Belt was given judgment for the full value of the one-third of the crops. He got nothing on account of the land, but did not appeal. Clark, the defendant, appealed from the award as to the crops. We all agree Clark has good cause for complaint on that score, and that the measure of damages applied was erroneously excessive, but my Brothers nevertheless condone the erroneous excess to Belt by finding the trial court erred also as to the land. Whether there was error as to the land depends upon the place of the contract. South Dakota has a statute definitely prescribing the measure of damages for breach of contract for sale of land. If the contract was made there where Clark lived, instead of in Iowa where Belt resided, the South Dakota statutory rule would apply, and the decision of the trial court on the land item would be right. The local statutory rule of the state would, in such case, be applied in the federal court. The trial court assumed that the South Dakota rule of damages also prevailed in Iowa, and therefore it made no finding upon the issue as to the place of contract. The brief of Belt's counsel also contains an explicit concession that the rule is the same in both states. But to escape the South Dakota statute my Brothers conclude that the contract was not made there, but was made in Iowa. They reach

that conclusion by inferring that certain acts with respect to the contract were done in Iowa solely because Belt, the plaintiff, resided there. And this though no evidence is shown in the record, and, as already stated, the trial court made no finding upon the issue.  Having located the contract in Iowa, a rule of damages differing from that of South Dakota is applied.  It seems quite plain to me the case should be sent back and the parties given a chance to try the issue of fact upon which their rights depend.  The practice is well settled.  Graham v. Bayne, 18 How. 60, 63, 15 L. Ed. 265; The E. A. Packer, 140 U. S. 360, 365, 11 Sup. Ct. 794, 35 L. Ed. 453.  "Inferences will not be made to supply omitted findings of fact."  Chief Justice Marshall in Barnes v. Williams, 11 Wheat. 414, 6 L. Ed. 508.  Little Miami R. Co. v. United States, 108 U. S. 277, 2 Sup. Ct. 627, 27 L. Ed. 724, like the case at bar, went up on a finding of facts.  After speaking of certain items of depreciation the court said:

"For this reason we are unable to decide whether these losses, or any part of them, should be deducted.  As the omission to make the finding sufficiently specific in this particular undoubtedly arose from the fact that the court ruled as a matter of law that no deductions could be made on account of losses of this character, we will remand the cause, so that further inquiry may be had on that point."

In Murdock v. Ward, 178 U. S. 139, 149, 20 Sup. Ct. 775, 44 L. Ed. 1009, it was said:

"As, however, the parties proceeded on a mutual mistake of law, we think the practical injustice that might result from an affirmance of the judgment may be avoided by reversing the judgment at the cost of the plaintiff in error, and sending the cause back to the Circuit Court with directions to proceed therein according to law."