## MARKEY et al. v. BRUNSON.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1923.)

No. 2025.

**1. Evidence ⬦⟿448—Negotiations consummated in written contract are generally inadmissible to aid construction.**

The general rule is that negotiations consummated by a written contract are not admissible in evidence on the construction of the contract.

**2. Evidence ⬦⟿461(1)—Negotiations are admissible to show intent, where term has several meanings.**

Though parol evidence is admissible to show the sense in which parties used a term which has a definite meaning in the business or profession in which it is used, the actual state of the knowledge which the parties had on the subject, as revealed by their negotiations, may be inquired into to ascertain their intention, where the term used admits of more than one meaning or is not clear otherwise.

**3. Evidence ⬦⟿457—Evidence of negotiations held admissible to show meaning of term in contract.**

Where there was evidence tending to show that a term used in the contract of sale had one meaning in Chicago, where the seller was in business, and a different meaning in South Carolina, where the buyer was in business, evidence of the negotiations between the buyer and the seller's salesman, including an exhibition of a sample of the product sold, is admissible to show what that term meant as used in the contract.

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. Sales ☞166(5)—Buyer was justified in refusing goods not conforming to sample.

Where the evidence tended to show that a term used in a contract of sale had a different meaning in different markets, an instruction that, if the seller's salesman exhibited a sample as the article he was selling under that term, defendant did not breach his contract in refusing to accept a different article, was correct.

5. Sales ☞55—Contract made where it came into effect by being signed by buyer.

Where the contract was prepared and signed by the sellers in Chicago, but did not come into effect until signed by the buyer in South Carolina, the latter state was the place of the making of the contract.

6. Sales ☞55—Contract construed according to law where made and to be performed.

A contract is to be construed according to the law of the place where it was made and where it was to be performed, because the title to the goods sold would not vest in the buyer until he paid the draft and received the bill of lading there, so that the trade terms and customs obtaining in that market, and not those of the residence of the seller, control.

7. Sales ☞177—Failure to ship at time agreed justifies refusal to accept merchandise.

Where a seller agreed to ship the fertilizer ordered by a buyer in equal monthly quantities during designated months, his failure to comply with his undertaking as to the time of shipment relieved the buyer of his obligation to receive goods shipped after the expiration of the time.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Action at law by Frank S. Markey and another, copartners in business under the firm name of the Independent Pulverized Manure Company, against Peter C. Brunson. Judgment for defendant, and plaintiffs bring error. Affirmed.

William H. Grimball, of Charleston, S. C. (Whaley, Barnwell & Grimball, of Charleston, S. C., on the brief), for plaintiffs in error.

Arthur R. Young, of Charleston, S. C. (Hagood, Rivers & Young, of Charleston, S. C., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. In this action by plaintiffs as sellers against the defendant as purchaser for damages for breach of contract, the verdict was for the defendant. The plaintiffs rely for reversal on errors assigned in the admission of testimony and in instructions to the jury.

By written contract, dated at Chicago, June 20, 1920, plaintiffs' firm, "Independent Pulverized Manure Company, Chicago, Ill.," agreed to sell, and defendant, "Peter C. Brunson, Orangeburg, S. C.," agreed to purchase, 500 tons of "ground sheep manure," to be shipped to defendant "in equal monthly quantities from October to December, inclusive." Defendant refused to accept the goods shipped. He denied breach of the contract, alleging, first, that the goods shipped were not of the kind contracted for; and, second, that they were not shipped at the times contracted for.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The evidence on the part of plaintiff was to the effect that the article shipped was sheep manure which had been subjected to a grinding process; that in Chicago and other markets, where sheep manure was well known, it was sold in four grades, unground, ground, finely ground, and pulverized; and that in these markets the manure shipped the defendant, and rejected as not the article purchased, was of the grade known in the general trade as "ground sheep manure," called for by the contract.

On the part of defendant evidence was admitted tending to show that the negotiations for the sale were in Charleston, S. C., and that "ground sheep manure," as known in the Charleston market, was that described by the witnesses for the defendant as pulverized sheep manure; that Nash, who agreed to purchase as agent for defendant, and Chisholm, who agreed to sell as agent for plaintiffs, so understood it in the negotiations; and that Chisholm exhibited to Nash a sample of pulverized manure as the article he was contracting to sell as ground sheep manure. Plaintiffs objected to the admission of the sample and of the negotiations between Nash for the defendant and Chisholm for the plaintiff.

[1, 2] The general rule is that negotiations consummated by a written contract are not admissible in evidence on the construction of the contract. True it may be also that, where a term is used in a contract which has a definite, fixed, and well-understood meaning in the business or profession in which it is used, parol evidence will not as a general rule be admitted to show that the parties used it in a different sense. De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896; Ryan v. Goodwin, McMul. Eq. (S. C.) 451. But when the term used admits of more than one meaning, or is not clear otherwise, the actual state of the knowledge which the parties had on the subject of the contract may be inquired into in order to ascertain the intention. 22 Corpus Juris, 1183.

[3] Here the evidence tended to show that ground sheep manure was understood in the trade in Chicago, where the contract was signed by the plaintiffs, to mean one thing, and another thing in South Carolina, where the contract was negotiated and where the defendant signed it. In this situation, in order to understand the intention of the parties, it was competent to admit evidence of the previous negotiations, including exhibition of the sample, to show what "ground sheep manure" was intended to mean in the contract. "Previous and contemporary transactions * * * may be very properly taken into consideration to ascertain the subject-matter of a contract and the sense in which the parties may have used particular terms." Brawley v. United States, 96 U. S. 168, 173 (24 L. Ed. 622) United States v. Bethlehem Steel Co., 205 U. S. 105, 118, 27 Sup. Ct. 450, 51 L. Ed. 731; Buckbee v. Hohenadel, 224 Fed. 14, 139 C. C. A. 478, L. R. A. 1916C, 1001; 23 R. C. L. 1328, 1398. We think the evidence was clearly competent.

[4] It follows, also, that the trial judge, in view of all the evidence, was right in charging that sheep manure was a new element in the manufacture of fertilizer in the Charleston market, and if the agent of

the seller exhibited to the agent of the buyer a sample of pulverized manure as the article he was selling as ground manure, the defendant did not breach his contract in refusing to accept a different article. Nor was there error in charging:

"If you find, on the other hand, that there was no sample shown, that there was no definition or illustration of the ground sheep manure by sample shown by the agent of the plaintiffs, at that sale, but that both sides simply dealt with ground sheep manure, and that had a meaning in the market at Charleston, then the contract is to be construed by the meaning it had in the market at Charleston."

[5, 6] The testimony warrants the conclusion that for the article sold Charleston was the nearest market to Orangeburg, the place of performance of the contract. The contract was prepared and signed by plaintiffs in Chicago, but did not come into effect until signed by defendant in South Carolina. Therefore that state was the place of the making of the contract. Clark v. Belt, 223 Fed. 573, 138 C. C. A. 1; 13 C. J. 581. South Carolina was also the place of performance, for the title to the manure did not vest in the purchaser until defendant had paid the draft and received the bill of lading in Orangeburg. The contract was therefore to be construed according to the law of South Carolina. Coghlan v. South Carolina Railroad Co., 142 U. S. 101, 110, 12 Sup. Ct. 150, 35 L. Ed. 951; Northern Pac. Ry. v. Wall, 241 U. S. 87, 91, 36 Sup. Ct. 493, 60 L. Ed. 905. It follows that the trade terms and customs obtaining in the markets of South Carolina, where the contract was made and was to be performed, and not those of the residence of the seller, controlled.

[7] The instructions were correct that compliance by the seller of his undertaking as to the time of shipment was necessary to charge defendant, and that defendant was under no obligation to receive goods shipped after the expiration of the time. "In the contracts of merchants, time is of the essence. The time of shipment is the usual and convenient means of fixing the probable time of arrival, with a view of providing funds to pay for the goods, or of fulfilling contracts with third persons. A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, in the sense in which that term is used in insurance and maritime law; that is to say, a condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract." Norrington v. Wright, 115 U. S. 203, 6 Sup. Ct. 14, 29 L. Ed. 366.

Affirmed.