[Civ. No. 4310. Second Appellate District, Division One.—October 31, 1923.]

GLOBE COTTON OIL MILLS et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—PLACE OF OCCURRENCE OF ACCIDENT—JURISDICTION OF INDUSTRIAL ACCIDENT COMMISSION.—The fact in itself that an accident out of which injuries arose to an employee occurred outside the state is not conclusive of jurisdiction of the Industrial Accident Commission, for the reason that section 58 of the Workmen's Compensation, Insurance and Safety Act, as amended in 1917 (Stats. 1917, p. 831), confers jurisdiction in all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the contract of hire is made within this state.

[2] ID.—PLACE OF CONTRACT — JURISDICTION — EVIDENCE.—The Industrial Accident Commission had jurisdiction over the claim of an employee for compensation who was injured outside of the state, where it appeared in substance that the employee, within this state, asked the superintendent of the employer for a job; that the superintendent said he would see about it and later told the employee he could go to work, it thus being shown that the contract of hire was made within the state.

[3] ID. — PERMANENT DISABILITY — ALLOWANCE — DISCRETION — CERTIORARI.—In a proceeding before the Industrial Accident Commis-

———

1. Extraterritorial application of workmen's compensation acts, notes, Ann. Cas. 1914D, 377; Ann. Cas. 1916A, 821; Ann. Cas. 1916B, 280; Ann. Cas. 1918B, 625; Ann. Cas. 1918D, 317; L. R. A. 1916A, 443; L. R. A. 1917D, 83.

3. Compensation for loss or impairment of eyesight within meaning of workmen's compensation acts, notes, Ann. Cas. 1918A, 533; 8 A. L. R. 1324; 24 A. L. R. 1466.

Right and extent of review of findings of Industrial Accident Commission under workmen's compensation acts, notes, Ann. Cas. 1916B, 475; Ann. Cas. 1918B, 647; L. R. A. 1917D, 186.

sion for compensation for injuries to an employee, where the employee's injury was of such a nature and to so great an extent as necessitated the removal of the lens of one eye, leaving but one one-hundredth vision in that eye, but with the aid of properly prepared and adjusted glasses his sight was restored to practically normal vision for most purposes, it cannot be said on *certiorari* that the commission abused its discretion in determining in accordance with the terms of the statute and its adopted schedule of disability ratings that the percentage of the employee's permanent disability was 19¼ per cent, even though such schedule fixed 35½ per cent as a maximum allowance for complete loss of sight without removal of the eye-ball.

PROCEEDING in Certiorari to annul an award of the Industrial Accident Commission granting compensation. Award affirmed.

The facts are stated in the opinion of the court.

Hickox, Crenshaw & Trude for Petitioners.

A. E. Graupner and W. H. Pillsbury for Respondents.

HOUSER, J.—*Certiorari* to review proceedings of the Industrial Accident Commission in connection with a claim presented by Frank Kowall as applicant against Globe Cotton Oil Mills and others as defendants for damages caused by an injury received by said Kowall while in the employ of said defendants.

The questions which this court is called upon to decide are, first, whether or not the Industrial Accident Commission had jurisdiction of the matter, and, secondly, whether the percentage of permanent disability of the claimant was correctly determined by the Commission.

[1] The accident out of which the injuries to the claimant arose occurred in Mexico. That fact in itself, however, is not conclusive of jurisdiction, for the reason that section 58 of the Workmen's Compensation, Insurance and Safety Act, as amended in 1917 (Stats. 1917, p. 870), confers jurisdiction in all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the contract of hire is made within this state. [2] The primary question which the Commission had to determine was simply as to where the contract of hire was

entered into between the claimant and his employer. The evidence showed that the Globe Cotton Oil Mills was engaged in some construction work in Mexico, just below the border line of the state of California; that C. N. Perry was superintendent of the work and Charles Lichtenberger was the foreman; that a few days before January 25, 1922, at the border town of Calexico, in the state of California, Kowall asked Perry for employment, to which Perry replied that when he went down to the Mexican camp he would ask Lichtenberger "how he was fixed"; that Perry testified that he made it a rule never to hire a man. He further testified: "In other words, if I put a man in charge of the work it is up to him to deliver the work and it is not up to me to say who he shall carry on the pay-roll"; that thereafter Perry did talk to Lichtenberger regarding the proposed employment of Kowall, with the result that Lichtenberger told Perry to send Kowall down, following which Perry saw Kowall at Calexico and asked him if he was ready to go; that on the day thereafter Kowall did go down to the camp, and on his arrival there no conversation occurred between him and Lichtenberger other than a greeting by Kowall of "How do you do; where is my bunk?" and a response by Lichtenberger of "Make yourself at home; there is your bunk; throw in and get ready to work," followed a few days later by a fixing of the compensation to be paid to Kowall for his services. The substance of the negotiations was that at Calexico, within the state of California, Kowall asked the superintendent for a job; the superintendent said he would see about it and later told Kowall that he could go to work. Whatever the superintendent may have had in his mind regarding the propriety of letting his foreman hire his own men, or whatever arrangement the superintendent may have had with his foreman concerning the matter, is of no consequence here. So far as the workman was concerned, he applied for his employment directly to the superintendent at Calexico, and it was the superintendent who indicated to him that he could have the job. A contract is made at the place where the offer is accepted. (*Bank of Yolo* v. *Sperry Flour Co.,* 141 Cal. 314 [65 L. R. A. 90, 74 Pac. 855]; *Michelin Tire Co.* v. *Coleman & Bentel Co.,* 179 Cal. 598 [178 Pac. 507].) The place of the contract is the place at which the last act was done by either of the parties

essential to a meeting of the minds. (*Clark* v. *Belt,* 223 Fed. 573 [138 C. C. A. 1].) That the contract was complete at the time the superintendent asked Kowall when he would be ready to go is shown by the fact that on the arrival of the workman at the construction camp in Mexico no conversation took place other than an inquiry by the workman as to the location of his "bunk," its designation by the foreman and a direction to "throw in and get ready to work." Perry may have had it in mind not to interfere with Lichtenberger in his right to employ the men who were to work under his direction, but legal principles affecting the contract rights of individuals cannot be prejudicially affected by what one party may have concealed within the recesses of his mind and which he fails to divulge to the individual with whom he is negotiating and with whom contractual relations are later consummated. Perry as the superintendent of construction had the power to disregard any rule or custom which he had theretofore followed regarding the hiring of men. There is nothing in the evidence to show that Kowall knew that Perry had abdicated any of his authority in the matter. Kowall had the right to assume that he was dealing with the supreme head of the construction department of the defendant company in the matter of employment. If any different rule prevailed, Kowall was entitled to complete knowledge thereof before entering into a final contract. If the *place* of contract was a part of the contract within the intention of both parties to the agreement, certainly each of the contracting parties should have been placed in possession of all the details going to a determination of that factor. It must be presumed that Kowall knew the law of this state affecting the status of an employee injured while engaged within the scope of his employment; also, that if the contract of hire were made in Mexico he would waive such rights. In such circumstances he might and probably would have declined the employment in Mexico on the ground that he could not afford to take the risk which such employment would necessarily involve, especially in view of the testimony herein that if he were not successful in obtaining the Mexican job he was assured of occupation in the Imperial Valley and on American soil. Kowall's testimony at least supports the conclusion by the Commission that the contract of hire was made in this state,

and the rule that where substantial conflict in the evidence exists the decision so reached by the Commission is conclusive is so well settled that a citation of authorities in support thereof is unnecessary.

[3] The remaining question has to do with the amount awarded by the Commission to the applicant on account of his injuries. Kowall's injury was of such a nature and to so great an extent as necessitated the removal of the lens of one eye. In its then condition he had but one one-hundredth vision in that eye, and owing to the fact that previously he had entirely lost the sight in his remaining eye, his situation was apparently that of a blind man. However, with the aid of properly prepared and adjusted glasses his sight was restored to practically normal vision for most purposes. It is admitted that under the provisions of the act here in question the respondent Commission is vested with a reasonable discretion in making disability ratings and in fixing the percentage under different claims. The Commission, in accordance with the terms of the statute and of its schedule theretofore adopted, determined that the percentage of applicant's permanent disability was 19¼ per cent, for which he was awarded the sum of $20.83 per week for 77 weeks, or a total of $1,603.91, and which award was based upon an earning capacity of $7.50 per day.

Complaint is made that because the schedule of the Commission fixes 35½ per cent as a maximum allowance for complete loss of sight without removal of the eye-ball, the allowance by the Commission of 19¼ per cent to the applicant, considering that he has 1/100 vision without glasses and normal vision with glasses, is excessive. The argument is that, considering applicant's age as being 48 years, even without the accident occurring, he would in all probability be compelled to wear glasses within a very short time; that because wearing glasses was somewhat inconvenient to the applicant constitutes no valid reason for awarding him anything; but, on the contrary, that the wearing of glasses would constitute a protection to his eyes, and that if he had been wearing goggles at the time the accident occurred the probabilities are that he would have suffered no injury whatsoever. In support of such reasoning the case of *McNamara* v. *McHarg-Barton Co.*, 200 App. Div. 188 [192 N. Y. Supp. 743], is cited. That case holds in effect that

where the loss of vision may be corrected by the use of glasses no award can be made therefor; which conclusion is supported by several cases from the same court. In the case of *Butch* v. *Shaver,* 150 Minn. 94 [184 N. W. 572], the applicant had suffered an injury to one of her eyes, with practically the same results as had the applicant here; that is, without glasses, no vision, and with glasses, normal vision; and the court held that because the disability might in a measure be overcome by artificial means was no good reason why compensation should not be awarded to her. Another case with similar facts is that of *Johannsen* v. *Union Iron Works* (N. J. Eq.), 117 Atl. 639, in which it is held that where an employee sustained an injury to his eye causing permanent impairment of vision, he was entitled to compensation, although the vision could be rendered normal by the use of glasses. It would seem apparent, without the use of argument or illustration, that the loss of the use of any organ or member of the body would constitute a permanent disability. Because such a loss may be regained by artificial means, while perhaps in a measure compensatory, is not a complete or satisfactory substitute for Nature's art. From an injury one might lose the use of either leg or both legs. Surely it should not follow that because thereafter such person might succeed in transporting himself, by means of crutches, or by a wheeled chair, to and from his place of employment, he had suffered no permanent disability. And so here, while by the aid of glasses the applicant has had his sight restored as long as those means are employed, the very instant that the glasses are removed from their proper position, whether such removal be caused intentionally or through an accident, the applicant is rendered absolutely helpless because of the total blindness in one eye and only 1/100 vision in the eye which was injured in the accident herein involved. Laying aside the probability of an accident, and considering the ability on the part of the applicant to be always in possession of his glasses, they will be very useful only at certain distances from given objects because of their failure to perform other than purely mechanical functions. The natural lens of the eye is controlled by the muscles so as to accommodate the sight to near objects as well as to those located at a distance. Spectacles cannot be so arranged; neither do they afford the same field

of vision as does the eye when naturally used. It is certainly a most difficult matter, if one that is possible, to determine with accuracy, or even with satisfaction, the degree of loss sustained by the impairment of any part of the human body. Perhaps the most that can be truthfully said of such determinations is that they are approximate and that they actually amount to nothing more than a rough estimate. It is common knowledge that one experienced person may differ greatly from another equally experienced in a conclusion regarding such matters. As is said in *Frankfort General Ins. Co.* v. *Pillsbury,* 173 Cal. 59 [159 Pac. 152]: "The extent of disability occasioned by an injury is not capable of exact measurement. The percentage of such disability is a matter to be determined by the Commission in the exercise of its sound discretion, based upon a fair view of all of the circumstances. Its conclusion on this matter is the determination of a question of fact, and is not subject to review by the courts unless palpably contrary to the undisputed evidence."

The Commission in the instant case has made an allowance based upon the evidence and its adopted schedules. So far as this court is able to determine, there was no abuse of discretion in its findings. In such circumstances its award should be affirmed. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.

A petition by petitioners to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1923.