MYER STEINBERG *v.* ABRAHAM STEINBERG.

*William H. Sleeper* and *Robert Shaw* (*Mr. Shaw* orally), for the plaintiff.

*Edmund F. Richards* and *John W. Perkins* (*Mr. Perkins* orally), for the defendant.

JOHNSTON, J.   The versions of the parties of the negotiations

leading up to the agreement of September 30, 1947 are in disagreement on essential points. This testimony was admissible because of the ambiguity in the description of "a certain farm owned by the seller on Westville Road, Plaistow, New Hampshire containing about thirty (30) acres." It was claimed by the plaintiff and denied by the defendant that this included a tract sold to Harold Kaye on August 15, 1947. "It has often been pointed out that, in this state, the interpretation of any grant, statutory, contractual or testamentary, consists in the ascertainment of intention and the question of intention is one of fact to be determined upon all the competent evidence available." *Hogan* v. *Lebel, ante,* 95, 97. See also, *Smart* v. *Huckins,* 82 N. H. 342, 347.

No question is raised concerning the sufficiency of the evidence to sustain the Court's decree. The plaintiff does argue that he was entitled to a decree because of the judicial admission of the defendant in paragraph 1 of his answer admitting the allegations in paragraph 1 of the bill that the property on Westville Road was the only farm property owned by the defendant in the state, and that it consisted of about 30 acres. It is said that the defendant cannot now claim that the Kaye property on Main Street was separate. The defendant is entitled to have his answer taken as a whole in order to determine the meaning of any part. Paragraph 5 expressly denies that the acreage sold on October 2 was a part of the premises to be conveyed to the plaintiff. This exception is overruled.

Plaintiff's requests 4, 7 and 12 all called for findings of fact that may be consistent with his account of the negotiations; but he was not entitled to have them granted if the Trial Judge believed the defendant as he apparently did. The defendant testified: "He [the plaintiff] wasn't interested in any bounds or land or any. Q. Did you point him out the bounds? A. No . . . Q. What talk did you have with him about bounds? A. Well I told him there was three lots of land sold since I bought the farm and I am selling him about thirty acres of land. Q. What were the three lots you told him about? A. One is sold to Mr. Wengel, one to Palmer and one to Kaye. Q. Now did you tell him that before this agreement was signed? A. Yes, sir. Q. Where did you tell him, where were you two when you told him? A. I told him several different times. Q. Where? Where were you? A. I told him at the farm, I also told him at the place where we made this agreement at the attorney's office that the three lots of land were sold. Q. Now you said something about the acreage. A. Well my deed, to make sure my deed

when I bought it reads thirty-five acres and I told him that's why I would put in the agreement thirty acres to make sure he gets what's coming to him. Q. And so you say you told him of three sales? A. That's right."

The plaintiff excepted to the ruling that Mr. Kaye might testify concerning his purchase of the tract on Main Street on August 15, 1947. His position is based on the statement in *Pettee* v. *Chapter*, 86 N. H. 419, that neither the thoughts nor the acts of one party before the execution of a written contract, if not known to the other party, can be used to explain the meaning of the writing. *Bianchi & Co.* v. *Bank, ante,* 14. The answer to this claim is found in the above testimony of the defendant. The Court could well find that the sale to Mr. Kaye was explained to the plaintiff and the latter put on inquiry as to any details that he might wish to know.

Although they are not argued in his brief, the plaintiff also took exceptions to the allowance of testimony of one Frank Given to the effect that he showed the plaintiff what was roughly the boundary of the farm land without the Kaye land. This witness was a tenant occupying the place under the defendant. The ground of the plaintiff's objections was that it did not appear that the tenant was acting in any way as the agent of the defendant. There is no such restriction upon the right to show the knowledge of the parties concerning an ambiguous matter in a written contract.

In the case of an ambiguous contract, inquiry may be made into the actual state of knowledge that the parties had on the subject of it. 32 C. J. S. 906. "Where, however, the language of the contract is not entirely clear but imports an ambiguity, though the parties may not be permitted to say in plain terms what was intended, parol evidence is competent, to the end that the court may be endued with the knowledge the parties had of the situation and the subject-matter and thus directed to the purpose intended by them." *McDaniel* v. *United Railways*, 165 Mo. App. 678, 690. See also, *Markey* v. *Brunson*, 286 F. 893; *Ward* v. *Company*, 80 Vt. 321; and 55 A. L. R. 1153, 1155. The knowledge that a party to an obscure contract has concerning its subject matter is an attending circumstance from which a court may find what he intended or should have known that the other party intended by the ambiguous part. To make evidence of this knowledge admissible, it is not necessary that the knowledge come from the other party to the contract.

*Exceptions overruled.*

All concurred.